S. H. TITTLE ET AL. v. M. L. VANLEER ET AL.

No. 238.—Decided February 10, 1896.

**1. Assignment.**

An assignment, whether statutory or at common law, conveys to the assignee the entire estate of the assignor. It vests the title which cannot be divested by the mere payment of the debts. (P. 178.)

**2. Deed of Trust—Mortgage.**

If the instrument on its face, when construed according to the settled rules of construction in this State, does not pass the title of the assignor to the assignee, it cannot be held an assignment but must be held to be a mortgage. (P. 178.)

**3. Case in Judgment.**

Duke & Dodson, being insolvent, conveyed all their property to Vanleer, trustee, to take possession, sell for cash, make deed in their names to purchasers, to apply

proceeds to expenses of the trust, to payment of certain creditors in order named, and should there be a surplus it was to be paid to the grantors, one-half to each. Held, that the instrument is a trust deed and not an assignment, and that it did not vest title in the trustee. (P. 176 to 178.)

### 4. Trust Deed—Acceptance by Creditors.

In action by such trustee against an attaching creditor causing the seizure of the goods subsequent to the execution of the trust deed, it was necessary to allege and to prove that some of the creditors had accepted before the attachment was levied in order to show that the instrument had become effective before such levy. (P. 178.)

### 5. Right of Trustee to Sue—Parties.

The possession of goods by the trustee, and the acceptance by one or more of the creditors prior to a levy would be sufficient to authorize the trustee to maintain a suit against a subsequent attaching creditor without joining the beneficiaries. (P. 178.)

### ON RE-HEARING.

### 6. Cases Discussed.

Jackson v. Harby, 65 Texas, 710; Milling Co. v. Eaton Guinan & Co., 86 Texas, 410; Wallis Landes & Co. v. Taylor, 67 Texas, 431; Stiles v. Hill, Fontaine & Co., 62 Texas, 429; National Bank v. Lovenberg, 63 Texas, 507; Watterman v. Silberberg, 67 Texas, 101; Hudson v. Milling & Elevator Co., 79 Texas, 401; Adams v. Bateman, 88 Texas, 130; Scott v. McDaniel, 67 Texas, 315; Bettes v. Weir Plow Co., 84 Texas, 543; Laird v. Weis Bros., 85 Texas, 93; Johnson v. Robinson, 68 Texas, 399; Hart & Co. v. Blum, 76 Texas, 113; Preston v. Carter Bros. & Co., 80 Texas, 388; Boyd v. Haynie, 83 Texas, 7; Foreman v. Burnette, 83 Texas, 399; Burnham, Hanna, Munger & Co. v. Logan, Evans & Smith, 88 Texas, 1. These cases cited and discussed. (Pp. 179 to 191.)

### 7. Assignment or Mortgage.

We conclude from the above authorities that in determining the question as to whether a given instrument belongs to one class or the other (assignment, or mortgage or trust deed in nature of mortgage) the court will be governed by the legal intent of the grantor as expressed in the language used therein when read in a proper case in the light of the circumstances attendant upon its execution. (P. 191.)

### 8. Same—Mortgage.

Where it appears from the face of the instrument so read that the intention of the grantor therein expressed was merely to charge the property with a preference lien, either as a security or as a means of immediate payment of debts therein specified, such instrument must be held a mortgage or deed of trust in the nature of a mortgage. (Pp. 191, 192.)

### 9. Same—Assignment.

But where, in addition to such intention, there also appears from the face thereof an intent to thereby divest the grantor of and to vest in the grantee all title and interest in the property for the purpose of providing for the immediate payment of such debts the instrument must be held an assignment. (Pp. 191, 192.)

### 10. Defeasance, When Presumed.

If only the first intention (to fix a lien, etc.) appears, a condition of defeasance will, as a matter of law, be implied and the instrument read as if such condition were written therein; but if the second intent (to divest title, etc.) also appears no such condition will be implied. (P. 192.)

### 11. Circumstances Aiding Instrument.

Where there is doubt as to the true legal intent of an instrument courts have given great weight to the construction given by the parties, both as exhibited on its face or by subsequent acts. In such case every expression on the face of the instrument viewed in the light of the circumstances of its execution will be considered. The clearly expressed intent, however shown, will control. (P. 192.)

### 12. Estate of Trustee.

Until one of more of the beneficiaries in a deed of trust shall accept the security, the possession by the trustee, if taken, is that of his constituent or principal, and the property equally liable to execution as if in possession of such principal. (P. 196.)

### 13. Same—Pleading.

In an action by a trustee, holding possession under a deed of trust for the bene-

fit of preferred creditors, for conversion of such goods by an attaching creditor, it was necessary to allege that one or more of the secured creditors had accepted; in absence of such allegation a special exception pointing out such defect should have been sustained. To overrule it was error. (P. 196.)

ERROR to Court of Civil Appeals for Second District, in an appeal from Greer county.

This suit was brought by Vanleer to recover the value of certain goods transferred to him by Duke & Dodson through the instrument construed by the court in the opinion herein and taken from his possession by the sheriff by attachment at suit of a creditor of Duke and Dodson, the sheriff, Tittle, and the attaching creditor being made parties defendant. The trial court overruled an exception to the petition on the ground that it failed to allege acceptance of the transfer by any of the beneficiaries. Plaintiff had judgment below and defendants appealed to the Court of Civil Appeals, where the judgment was affirmed.

*Duncan G. Smith,* for plaintiff in error.—The action of the Court of Civil Appeals in overruling the third assignment of error is questioned, because it was necessary to allege an acceptance by the beneficiaries in the instrument under which plaintiff claimed, prior to the levy of the attachment by S. H. Tittle, sheriff, in behalf of Brown-Desnoyers Shoe Co.; Bauman v. Jaffray, 26 S. W. Rep., 260; Scurry v. Fromer, 26 S. W. Rep., 491; 26 S. W. Rep., 614.

*J. A. Powers* and *A. R. Garrett,* for Vanleer, defendant in error.— Every assignment made by insolvent debtors should be deemed a general one and should be construed to pass all the assignor's property subject to forced sale, whether so expressed or not. McCart v. Maddox, 68 Texas, 460; Moody & Co. v. Carroll, 71 Texas, 143; Eicks & Moore v. Copeland, 53 Texas, 581; Nave v. Britton, 61 Texas, 572.

It is not necessary for an assignee to join the creditors with him in an action against attaching creditors for wrongful conversion of property. Ebell v. Bursinger, 70 Texas, 120; Preston v. Carter Bros. & Co., 80 Texas, 388; Kerrison v. Stewart, 93 U. S., 155.

DENMAN, ASSOCIATE JUSTICE.—December 14, 1891, F. B. Duke and W. T. Dodson, composing the firm of Duke, Dodson & Co., executed and delivered to M. L. Vanleer an instrument in writing which divested of unnecessary verbiage is as follows: "Know all men by these presents, that we, F. B. Duke and W. T. Dodson, composing the firm of Duke, Dodson & Co., in consideration of one dollar, to us paid by Vanleer, for the uses and upon the trust herein mentioned, and by these presents doth sell, convey and deliver to said M. L. Vanleer forever, (here follows description of real and personal property.)

To have and to hold unto him the said M. L. Vanleer, trustee as aforesaid, the above described premises and personal property aforesaid, unto the said M. L. Vanleer, trustee, and his assigns forever in trust nevertheless and for the uses following and no other; that is to say the said M. L.

Vanleer, trustee as aforesaid, shall and does take actual and exclusive possession and control of all the above described property; and the said M. L. Vanleer, trustee as aforesaid, is to sell all of the aforesaid real and personal property, and make a deed in our name to same, at private or public sale, for cash in such manner and quantity as he may deem best for the purpose of obtaining the greatest amount of net proceeds in cash from the sale of said property or any part thereof. The said M. L. Vanleer, trustee, is to apply the proceeds of the sale of the said property in the following order, to-wit:

First. The expenses of executing this trust as they occur including the sum of fifty dollars per month for the services of the said M. L. Vanleer in executing this trust and all other necessary expenses connected therewith.

Second. The said M. L. Vanleer, trustee as aforesaid, shall apply the remainder of the proceeds of the sale of the said property to the parties hereinafter named and in the order named as the preferred creditors of the firm of Duke & Dodson Co. (Here follows list of creditors.)

That is to say the said M. L. Vanleer, trustee as aforesaid, shall, as fast as he realizes money from the sale of any said property, apply it to the extinguishment of our indebtedness to said parties, commencing with No. 1 and continuing to pay them off according to their number as appears in the above list of creditors until they are all paid or until the property is exhausted.

But it is to be paid out in full of each claim in its order and number, and after faithfully executing the trust herein, should there be any surplus, the said M. L. Vanleer is to pay the same to F. B. Duke one-half and W. T. Dodson the other half of said surplus.

In testimony whereof we have on this the 14th day of December, A. D. 1891, signed our names at Mangum, Texas.

Duke & Dodson Co., per F. B. Duke.

F. B. Duke,

W. T. Dodson.

At the time the instrument was executed the grantors were insolvent and the property and creditors therein set out constituted all their property and creditors, and said property was not sufficient to pay said debts.

Vanleer, immediately upon the execution of the instrument, took actual possession of the property described herein, and the next day one of the creditors, standing near the last in the order of preference, with actual notice of the instrument, caused a portion of the personal property mentioned therein to be seized and sold under a writ of attachment issued against said grantors.

Vanleer, thereupon, brought this suit against the sheriff executing said writ and the plaintiff therein and their respective sureties for the value of the property so seized, and recovered judgment therefor, which was affirmed by the Court of Civil Appeals. Vanleer's petition did not allege that any of the creditors, mentioned in the instrument above set out, had, at the time the attachment was levied, accepted its provisions.

Defendants specially excepted to the sufficiency of the petition for want of such an allegation, which exception the trial court and Court of Civil Appeals held not well taken, and this ruling is here assigned as error.

Both of said courts treated said instrument as a statutory assignment. If such construction be correct there was no error in overruling the exception; for, though it be considered that an acceptance by the creditor is essential to the taking effect of a common law assignment or mortgage (86 Texas, 401), still it is clear that the statute regulating assignments by persons insolvent or contemplating insolvency gives effect to such assignments independent of the acceptance by creditors.

But is the instrument an assignment?

An assignment, whether statutory or common law, conveys to the assignee the entire estate of the assignor. It vests the title in the assignee, which cannot be divested by mere payment of the debts.

If the debts be satisfied the assignee would hold the balance of the assigned estate in trust for the assignor, but a conveyance or decree would be necessary to revest title in the assignor. If the instrument on its face, when construed according to the settled rules of construction in this State, does not pass the title of the assignor to the assignee it cannot be held to be an assignment, but must be held to be a mortgage. Johnson v. Robinson, 68 Texas, 399; Watterman v. Silberberg, 67 Texas, 101.

The instrument in question transfers the property to Vanleer as a trustee, authorizes him to sell and make deed in name of the grantors, and provides for return of the surplus to the grantors, and appears to have all the elements of an ordinary trust deed which, under the settled rules in this State, does not vest title in the trustee. Stiles v. Hill, Fontaine & Co., 62 Texas, 429; Watterman v. Silberberg, 67 Texas, 101.

We are of opinion that the instrument in question is a trust deed and not an assignment; that it was necessary to allege and prove that some of the creditors had accepted before the attachment was levied in order to show that the instrument had become effective before such levy, and that the court erred in overruling said exception. Milling Co. v. Eaton, Guinan & Co., 86 Texas, 401.

We are of opinion that the possession of Vanleer, if there was an acceptance by any creditor prior to the levy, was sufficient to authorize him to maintain a suit against the attaching creditor without joining all the beneficiaries.

It is his duty to protect the subject matter of the trust. If there be any danger of his misapplying the fund a court of equity has ample power to protect the beneficiaries upon a proper showing made by them.

Since the instrument is not an assignment it will not be necessary to discuss the other assignments of error, as the questions would not probably arise on another trial.

For the error above indicated the judgments of the Court of Civil Appeals and of the District Court are reversed and the cause is remanded.

*Reversed and remanded.*

Opinion delivered February 25, 1895.

*A. P. Eubank,* for defendants in error, filed a motion for rehearing.

Arguments supporting the motion were filed by *B. P. Eubank, Willie, Campbell & Ballinger,* and by *Scott, Levi & Smith.*

*D. G. Smith,* for plaintiff in error, filed an argument resisting the motion.

### OPINION ON MOTION FOR REHEARING.

## Delivered February 10, 1896.

DENMAN, Associate Justice.—There seems to have been no serious difference of opinion among the members of this court since the passage of the act of 1879, regulating an "assignment made by an insolvent debtor, or in contemplation of insolvency, for the benefit of his creditors," as to whether any particular instrument presented for construction should be held to be a mortgage or trust deed in the nature of a mortgage, or to be an assignment, there having been on this question no dissent entered and no case overruled, so far as we have been able to ascertain. There seems, however, to be much confusion in the mind of the profession as to the principles of law to be applied in determining whether a given instrument belongs to the one class or the other. This is doubtless due in a great measure (1) to the inherent difficulty of determining by construction from the face of an instrument, read in the light of the circumstances surrounding its execution, the true intent of the maker and (2) to the fact that the various instruments construed by this court have not always been so fully set forth in the reported cases as to enable the profession to certainly ascertain the very question considered and decided.

The first difficulty is unavoidable. Aided by the accumulated wisdom of ages, it is often a very troublesome question to determine from the face of an instrument, even when read in the light of the circumstances surrounding its execution, whether it was intended as a will or a deed, a mortgage or a conditional deed, an executed or an executory contract, a mortgage or an assignment.

The second difficulty may be to some extent lessened by a review of some of the cases in which this court has been called upon to determine whether the instruments in question belonged to one class or the other, i. e.—whether they were mortgages or trust deeds in the nature of mortgages, or assignments.

In Jackson v. Harby, 65 Texas, 710, grantors, Edmison & Whatley, being insolvent, conveyed "unto Weisenfeld & Co. and to Levi Whatley" all of their stock of goods "in trust nevertheless to J. D. Harby and J. J. Whatley, co-trustees, for the following purposes and uses, to-wit:" (1) To take possession of the same; (2) to sell same in regular course of business or otherwise in their discretion; (3) to pay cost of executing trust; (4) to pay Weidenfeld & Co. a debt of $680; (5) to pay Levi Whatley a debt of $385. The instrument concluded with the provision that "when the said $680 and the said $385 and all costs of the trust herein created shall

have been fully and truly paid, then this instrument shall be of non-effect, otherwise to remain in full force." The trustees having taken possession, the goods were seized by Jackson, Sheriff of Limestone County, under writs of attachment, and sold and proceeds turned over to attaching creditors, whereupon the trustees sued the sheriff, his bondsmen and the attaching creditors for their value. The defense was, that the instrument was executed for the purpose of defrauding the creditors of the grantor, among whom were plaintiffs in the attachment suits. If the instrument had been an assignment, grantors being insolvent, no such defense would have been permissible, and the trustees as assignees would have been entitled to recover in any event. But if the instrument was a mortgage or trust deed in the nature of a mortgage, the defense, if true, would have prevented a recovery by the trustees. Therefore the question as to whether the instrument was a mortgage or trust deed in the nature of a mortgage, or an assignment, was directly involved and must have been passed upon by the court before proceeding to consider the other questions in the case. The court held the instrument to belong to the former class, stating, through Robertson, J., that "they (the trustees) are not assignees. Deeds of trust conveying property directly to trustees, made to secure and pay particular creditors, though expressed in terms sufficient to pass title, if made for creditors generally, are construed to be mortgages 'with some of the qualities of an assignment superadded.' Baldwin v. Peet, 22 Texas, 718; Burrell on Assignments, 3d Edition, secs. 6, 7, 8. The instrument under which the plaintiffs claimed, was of this character. Edmison and Whatley continued to be the owners of the property subject to the trust." The court also lay stress upon the fact that the conveyance was to the preferred creditors, as an indication that the instrument was a mortgage and not an assignment, but, although the opinion adverts to and sets out the defeasance clause, it does not seem to attach much importance to the same as indicative of a mortgage.

In Milling Co. v. Eaton, Guinan & Co., 86 Texas, 401, the original instrument is not copied in full into the transcript, but, in the finding of facts by the court below, its substance is stated, from which it appears that Eaton, Guinan & Co., merchants, on the day of their failure in business "conveyed their property by deed of trust to John F. Marshall for the purpose of securing the payment of certain of their debts." "Said deed of trust provided and directed that said John F. Marshall should take immediate possession of the property and effects thereby conveyed (which he did) and sell a sufficiency thereof in the usual course of trade for cash to pay off all of the debts therein mentioned, after reserving to said trustees two and one-half per cent commission on the amount realized by such sales, and also a sufficiency to pay all expenses of sales and executing said trust and the rent of the store-house, and after having sold such sufficiency, to return to said Eaton, Guinan & Co. the remainder of said property and effects, when said conveyance or instrument was to be of no further effect." After the trustee had taken possession and before any creditor mentioned therein had assented to or accepted.

the terms of the trust deed, the Milling Co., creditors of Eaton, Guinan & Co., sued the latter and in such suit caused an attachment to be sued out and levied upon the property described in the trust deed, claiming that the same had not become effective by reason of the fact that no creditor had assented to or accepted same. If the instrument was an assignment, the grantors being insolvent, acceptance of creditors by force of our statute was not necessary, and therefore the instrument took effect upon its delivery, and plaintiffs would not have been entitled to a foreclosure of the attachment lien. This proposition was conceded and is clearly stated in the opinion rendered by Chief Justice Stayton. If, however, the instrument was a mortgage or trust deed in the nature of a mortgage, it did not, under the opinion, become effective before the levy of attachment, because no creditor had then accepted or assented thereto, and therefore plaintiffs were entitled to their foreclosure. Thus, the question as to whether the instrument belonged to the one class or the other was necessarily involved. The learned Chief Justice, in holding the instrument to be a mortgage, though mentioning in the beginning of the opinion that the instrument provided that after paying the debts specified and returning the residue of the property to the grantors "the trust deed was to be no longer operative," does not seem to attach any importance to the defeasance clause, the expression of which he probably regarded as entirely formal, but says that the only difference between the case of Wallis, Landes & Co. v. Taylor, 67 Texas, 431, and the one under discussion, is "that in this the instrument confers the power on a third person to sell the mortgaged property and apply the proceeds as therein directed, while in the former case the power was to be exercised by the creditors named. Both instruments would have created mortgages if consummated." The instrument in Wallis, Landes & Co. v. Taylor is set out in full in the report of that case and is in the following words: "Know all men by these presents that for and in consideration of value received, I, W. H. Taylor, bargain, sell and convey the merchandise in my two houses situated in Anderson, Grimes County, Texas, to the undersigned parties to satisfy a part or all of certain claims held by them against me for the following amounts: (Here follows list of creditors and amount of their respective claims) (Signed) W. H. Taylor."

Notwithstanding the fact that neither Justice Robertson nor Chief Justice Stayton, in the opinions above referred to, seem to attach any importance to the formal defeasance clause, and certainly did not regard it as the decisive test as to whether the instrument belonged to one class or the other, and notwithstanding the fact that each of such instruments fixed preference liens on the property therein described and provided for the immediate sale thereof to pay the specific debts therein mentioned, as is done in the case before us, nevertheless it is urged that by reason of the existence of such clauses such cases are not authority in support of the latter.

While we do not agree with this contention, we will proceed to con-

sider another class of cases held by this court to be mortgages or deeds of trust in the nature of mortgages.

In Stiles v. Hill, Fontaine & Co., 62 Texas, 429, the instrument, omitting unnecessary verbiage, was as follows: "Whereas, we, Rogers and Atkinson are indebted to Hill, Fontaine & Co. $850, evidenced by our note this date due one day after date, and whereas we are desirous of securing the payment of said note, therefore in consideration of the premises we by these presents transfer, convey, sell and deliver to Hill, Fontaine & Co. our entire stock of goods, wares and merchandise. (Here follows description of property.) The possession of said goods, wares and merchandise is hereby delivered to Hill, Fontaine & Co., and they are hereby authorized to sell same at public or private sale in such quantities as they may deem best for cash and to apply the proceeds of the property so sold (1) to the expenses of executing the trust and next to the payment of said note, and when enough of said goods, etc., are sold to pay off and discharge said expenses and note, Hill, Fontaine & Co. are to deliver the remainder of said goods to us or to our order." The insolvency of the grantors was shown. This court, through Justice Stayton, in holding the instrument to be a mortgage, say: "The instrument through which Hill, Fontaine & Co. claim to have acquired rights does not bear on its face any evidence whatever that it was intended to operate as an assignment for the benefit of creditors under the act of March 24th, '79. On the contrary, it purports to be just what it is, a mortgage with power to sell, given to secure a debt which its makers, Rogers and Atkinson, owed to the appellees, and it carried with it all the incidents of such mortgage, whether expressed or not." There was no defeasance clause expressed, but there was a provision for the return of the unsold property to the grantors, and the grantee in the instrument was the secured creditor. There was nothing upon the face of the instrument to indicate an intention on the part of the grantor, not only to fix a preference lien upon the property in favor of a creditor and provide for its payment by sale thereof, but to go further and divest himself of all interest in or control over said property. The opinion does not disclose which of these circumstances the court considered most indicative of a mortgage, nor upon what grounds the conclusion was reached.

In National Bank v. Lovenberg, 63 Texas, 507, the instrument there set out in full recited that the grantor was indebted to the grantee in a large sum "and was anxious to pay" same, therefore he transferred all his stock of goods to the grantee, providing for a sale thereof within ninety days and for the application of the proceeds to the satisfaction of said indebtedness, and for the return of "any goods or outstandings or money" that might remain. The instrument contained no defeasance clause, but it was held to be clearly a chattel mortgage "providing on its face for a lien upon a stock of goods and choses in action to secure the payment of an indebtedness." In construing the instrument, this court, through Chief Justice Willie, say: "It is in effect a conveyance with power to sell for the payment of a debt, the grantee being required to

proceed to foreclose by sale, as in case of failure to pay the indebtedness when due. The property is held by the grantee just as it is by a mortgagee, with power to sell at private sale, after default in payment of the debts secured by it has occurred." It is clear that this instrument contemplated an immediate sale of the goods therein described for the payment of the debt, though the grantor had the right to take advantage of the implied defeasance and defeat the instrument by paying the debt, and that it was so understood by the court, but it is also clear that the court did not consider the instrument evidencing an intent on the part of the grantor to divest himself of all interest in said property for such purpose, for they say: "Whilst the present instrument does not provide that the conveyance of the goods shall be void upon the payment of a sum of money by the grantor, it does require the grantee to dispose of the goods within a specified time, and apply the proceeds to a debt due him from the maker of the instrument, and to return to the latter the remainder of the property then left undisposed of in the hands of the grantee." The court does not seem to attach any importance to the fact that the conveyance was to the creditor, in determining the intent.

In Watterman v. Silberberg, 67 Texas, 101, we have been unable to secure a copy of the original instrument, but it appears from the opinion of Justice Stayton that Marks executed an instrument, acknowledging his indebtedness to several persons, for which Silberberg was surety, and conveying all of his property, which was described therein, to the latter, with power to sell same and apply the proceeds to the payment of such debts, and that the instrument contained a clause to the effect that "when a sufficient quantity of said goods are sold to pay off and discharge said expenses and said claims and interest as specified, then the remainder of said goods to be returned to me or my order." And that "this conveyance and delivery of goods, wares and merchandise is intended as a mortgage to secure the payment of the claims herein named." It appears that the grantor was insolvent and there appears to have been no defeasance clause expressed in the instrument.

The court, in holding the instrument a mortgage, place stress upon the fact that it was a conveyance to the creditor, and say: "It is very generally held that a conveyance of personal property by a debtor to a creditor containing a power to sell the property and pay the debts, with an *express* or *implied* reservation to the former of any part of the property not required to be sold to pay the debt, is, in effect, a mortgage. This was held in Stiles v. Hill, Fontaine & Co., 62 Texas, 429, and is in accord with the great weight of authority."

The learned Justice, however, in the course of the opinion states generally, that "an instrument which upon its face shows that it was intended as security for debt, or debts, is to be deemed a mortgage or an instrument in the nature of a mortgage, although it may give power to a creditor, creditors, or even a third person to sell the thing mortgaged and to apply the proceeds to the debt or debts secured. When it appears that the leading purpose of the instrument is to give security to the

creditor or creditors, the debtor making it will be *deemea to have the right at any time before property is sold to avoid it by paying the debt or debts secured.* In such case, even where a mortgage is held to pass the legal title to a thing mortgaged, a condition of defeasance will be *implied* if it be not *expressed.* When such condition is expressed or may be implied, the instrument must be held to be a mortgage or in the nature of a mortgage." (Italics are ours.)

In Hudson v. Milling & Elevator Co., 79 Texas, 401, the instrument is correctly set out in the opinion rendered by Chief Justice Stayton. The grantors thereby conveyed to a trustee all of their stock of merchandise and claims due them "for the purpose of paying the above described notes and evidences of indebtedness to the above named persons in the order named and described herein," and the trustee was directed to sell all of said property within ninety days from the date of the instrument for cash and apply the proceeds to the payment of said debts in the order named. The instrument also contains a stipulation that it was "intended as a mortgage to secure the payment of the claims," and provided that when a sufficient quantity of the property was sold to pay same, "then the remainder of such goods, wares and merchandise, or any proceeds of such sale remaining shall be returned to us." It contained no clause of defeasance and the provision in reference to the return of the surplus applied to either the unsold property or such of the proceeds of sale as might not be necessary to pay the debts mentioned in the instrument. The court found that the partnership grantors were insolvent, but it did not clearly appear whether the partners individually were insolvent. The aggregate amount of claims secured by the instrument was $14,137, the preferred creditors being about sixty-five in number, and the estimated value of the property did not exceed $6400 and it seems that only $2525 was realized from the same. The suit was brought by some of the beneficiaries under the instrument for the purpose of having the same declared an assignment under the statute for the equal benefit of all creditors and to have it so enforced, thus destroying the preferences declared by the instrument. The trial court construed the instrument to be an assignment, declared the preferences therein given void, and directed the trustee to administer the trust under the statute. This court, after discussing the proposition that the burden rested on plaintiffs to show that each of the partners was insolvent and that the evidence did not establish that fact say, "the instrument before us is in form strictly a mortgage and had it been shown that its makers were insolvent, we would not be authorized to hold that it was an assignment. The purpose of the instrument was to secure, as far as the mortgaged property would, the payment of the debts enumerated in it, and it contains a reservation of right to any surplus. The payment of the enumerated debts would have cancelled it or deprived it of any effect and the property would have stood as though it had never been executed. Such instruments have been steadily held to be mortgages. Stiles v. Hill, 62 Texas, 430; Jackson v. Harby, 65 Texas, 710; Baldwin v. Peet,

22 Texas, 718; Watterman v. Silberberg, 67 Texas, 100. To hold otherwise would be to do violence to the settled principles of the law, as well as to the intent of the parties. The object in this case is to have that which is clearly a mortgage and nothing else, declared a general assignment for the benefit of creditors. This cannot be claimed from the language used in the instrument, nor from the evident purpose for which it was executed. That purpose was to secure, as far as the property would, the payment of enumerated debts and to give some of them priority of others." The court thereupon proceeded to reverse the judgment of the court below, and render judgment for the appellants. If the court had considered that proof of insolvency of each of the partners would have changed the ruling, then judgment would not have been rendered here, but the cause would have been remanded, in order to have given the parties the opportunity to make such proof.

It is clear that this instrument evidenced upon its face an intent to fix a preference lien upon the property therein described in favor of the creditors in the order therein mentioned, and that such claims were to be satisfied out of the proceeds of sales of said property, but that such instrument bore no evidence upon its face of an intent on the part of the grantors to thereby divest themselves of all title or interest in said property and pass the same to the trustee.

In Adams v. Bateman, et al., 88 Texas, 130, in which an application for writ of error was refused by this court, the instrument as set out in the opinion of the Court of Civil Appeals, 29 S. W. Rep., 1124, is substantially the same as the one in Hudson v. Milling & Elevator Co. above. And it would appear that the later case was decided in strict conformity with the first.

Notwithstanding the fact that each of the instruments in the five cases next above, fixed preference liens on the property therein described, and provided for the immediate sale thereof to pay specific debts therein mentioned, and contained no evidence of an intention on the part of the grantor to divest himself of all title and interest in said property, as is the case in the instrument under consideration,—still it is contended that such cases are not direct authority in support of our former opinion herein for the reason that in each of such cases there is an express reservation to the grantor of such property as may not be disposed of in the execution of the trust, whereas in the instrument under consideration, the reservation is only of surplus of the proceeds of the sale. We are of opinion that this position is not tenable, but we will now examine the cases which contain a reservation only of the surplus of the proceeds of sale.

In Scott et al. v. McDaniel, 67 Texas, 315 the instrument was in substance: "Whereas we (the grantors) are justly indebted to W. T. and James W. Turner, as follows: * * * , and whereas, we are desirous of securing to said Turners the money we owe them on said notes, therefore in consideration of the premises, we do grant, bargain, sell, convey and assign to Lock McDaniel (here follows description of lots, store-

house and goods) to have and to hold unto him the said McDaniel, his successors, etc., said property in full and absolute title forever, in trust, however, as follows:    That said McDaniel shall take immediate possession and proceed to sell said property at private or public sale as to him shall seem best for the interest of said Turners; and out of the proceeds after paying expenses he shall pay (1) the indebtedness to the said Turners, principal and interest; (2) whatever may be justly due L. & H. Blum on notes for which said Turners are our sureties; (3) should there be any balance, said trustee shall pay same to Wallis, Landes & Co., of Galveston, to whom we are justly indebted in the sum of $1300 on open account, if they will accept hereunder.    And any balance thereafter that may be still left shall be paid to us, and if said Wallis, Landes & Co. refuse to accept said balance, then said trustee shall pay said balance to L. & H. Blum on our general account to them, if they will accept the same.' "

The insolvency of the grantors was shown and the property described in the instrument was not sufficient to pay the debts therein preferred. This court, in holding the instrument to be a mortgage or trust deed in the nature of a mortgage, through Justice Stayton, say:    "The instrument is in effect a mortgage with power of sale and not an assignment, and any interest that might by any possibility remain after the payment of the enumerated debts would be subject to the claims of creditors and might be reached by them through any appropriate process. In such an instrument, a clause of defeasance is not necessary, but would be implied from the character of the instrument itself," and "it was executed by persons unable to pay their debts and gave preference to creditors named, but the right of even an insolvent debtor to do this has always been recognized, in the absence of legislation forbidding it."

In Bettes v. Weir Plow Co., 84 Texas, 543, the instrument was in substance:    "Martin & Co. in consideration of $5 and the trust hereinafter created, grant, bargain, sell, convey and deliver to H. S. Bettes and his successors in trust their stock, etc.    *    *    *    in trust for the following purposes, to-wit:    Whereas, we are indebted to the following firms and corporations in the amounts set opposite their respective names, to-wit (here follows list of creditors); and whereas we are unable to pay same, but desirous of securing the speedy payment thereof, therefore we hereby turn over and deliver the possession of said property to H. S. Bettes, trustee, expressly pledge same to him to secure the payment of said debts, authorize him to sell same for cash and direct him out of the proceeds to pay (1) expenses of the trust; (2) to pay the first debt in the list in full; (3) to pay the second debt in full, if sufficient remains; if not, to pay the balance thereon; (4) balance, if any, to apply to the third debt; (5) balance, if any, to be applied to the fourth debt; and (6) if any balance remains, to pay the same over to us or to our order."

The insolvency of the grantors was shown.    The Weir Plow Co., an unpreferred creditor of the grantors, caused a portion of the property conveyed to be seized and sold under attachment, and thereupon the

trustee, Bettes, and the beneficiaries in the instrument sued the attaching creditor and the Sheriff to recover damages for the seizure of the goods. If the instrument had been an assignment, the trustee would have been entitled to recover in any event. If, however, it was a mortgage, their right to recover depended upon the other questions discussed in the opinion and the discussion of which would have been unnecessary unless the instrument was a mortgage. The question as to whether the instrument was a mortgage must therefore have been settled in the affirmative before the other questions could have been reached. In referring to the character of the instrument, the court, through Justice Gaines, say: "Our decisions have carefully distinguished between assignments and mortgages of the character of that now under consideration. The latter are held not to be assignments within the meaning of the act, and its provisions (other than contained in Sec. 17) have been declared to have no application to mortgages. It would seem therefore that mortgages and liens are not embraced in the terms of the title of the act."

In each of the two cases next above mentioned the conveyance was to a trustee, created preference liens upon specified property for the purpose of paying specified indebtedness in the order of preference, contained no condition of defeasance, no provision for the return of unsold property, but did provide for the return of the surplus of the proceeds of sale. There was, however, no expression on the face of either instrument evidencing an intent on the part of the grantor to divest himself of all title and interest in the property. It would seem that the instruments in these cases are substantially the same as the one set out in our former opinion herein. We will now examine the cases in which the instruments contained neither a defeasance clause nor any provisions for return of surplus of property or proceeds of sale.

In Wallis, Landes & Co. v. Taylor, 67 Texas, 431, the instrument therein set out and hereinbefore copied contains neither a condition of defeasance nor a clause providing for the return of surplus of property or surplus of proceeds of sales. It merely fixes a lien or charge upon the property therein mentioned for the purpose of paying the debts therein specified, without any expression on the face thereof to the effect that the instrument was intended as a security. The instrument was treated as a mortgage and, as we have seen above, was subsequently referred to in Milling Co. v. Eaton, Guinan & Co., by the learned Chief Justice, who wrote both opinions, as being similar to the instrument in the latter case.

In Laird v. Weis Bros., 85 Texas, 93, the instrument was substantially as follows: "Whereas, I, Hermann Kempenski, am justly indebted to the following persons and corporations, to-wit: (Here follows a list of 28 creditors, aggregating $6040. And, whereas, I am anxious to secure to the full extent of my means the payment of the aforesaid indebtedness; therefore, I, in consideration of the premises, hereby grant, sell, transfer and deliver unto J. E. B. Laird all my entire stock of goods, etc. (Here follows description of property.) That the property and effects

herein conveyed is all the property owned by me subject to forced sale. This transfer and conveyance is intended as a mortgage to secure to the full extent of my effects the payment of the aforesaid claims, and said trustee, for the purpose of paying the same or so much thereof as he may be able so to do, is hereby authorized to take charge of and sell said goods, wares and merchandise for cash, at wholesale or by retail, at private sale or public auction, as may by him be deemed best, and the proceeds arising from such sale or sales and the money collected on said notes and accounts shall be by said trustee applied as follows: (1) to the payment of the costs and expense of executing this trust, including a reasonable commission to the trustee, and a reasonable attorney's fee; (2) to the payment of the aforementioned claims in the following order, that is to say, the claims of the City National Bank shall be first paid; next the claims of J. Nichelson & Bros.; next the claim of J. H. Chiles; next the claim of T. H. Phillipson & Co.; next the claim of J. E. B. Laird; next the claim of David Kempinski and the remainder of the said above enumerated claims shall be paid without distinction or preference." The grantor was shown to be insolvent. The commission of appeals in holding said instrument a mortgage, through Collard, J., say: "The instrument was evidently a mortgage with power of sale. Its object and its terms as expressed make it a security for the debts named. It does not stipulate that any residue left over in the hands of the trustee after payment of the debts as directed should be returned to the debtor, but the law would do this if a mortgage was intended. The expressions in the instrument that the purpose of its execution was "to secure the payment of debts and the emphatic statement that it was intended as a mortgage to secure debts leaves no room for argument. A mortgage is a security, and whether it so declares or not, the equity of redemption remains in the mortgagor. The instrument is not similar to those in the cases of Preston v. Carter Bros., 80 Texas, 388, and Johnson v. Robinson, 68 Texas, 400. * * * * * * An instrument may contain all the terms of an absolute conveyance, and yet, if it is apparent from its terms that it was intended as a security for debt, it would be treated as a mortgage. Whether a security or not, is the criterion." This opinion was approved by this court. It will be noticed that this instrument creates a preference lien in favor of certain creditors with the evident intent that the property should be sold to pay same in the order of preference, that it does not contain a condition of defeasance or provide for a return of surplus either of property unsold or money not used in satisfaction of the debts therein preferred, nor does it make any provision as to what shall be done with the surplus. There is nothing, however, upon the face of the instrument evidencing an intent to divest the grantor of all title to the property as will be seen to have been the case in the instruments held to be assignments in the cases hereinafter referred to. It would seem that if the instrument in this case was properly held to be a mortgage then the instrument under consideration herein must be so held.

We will now notice the instruments which have been held by this court to be assignments and not mortgages or trust deeds in the nature of mortgages.

In Johnson v. Robinson, 68 Texas, 399, the instrument was substantially as follows: "Whereas, we, Stone & Co., composed of E. N. Stone and A. G. Roulston, are justly indebted to J. M. Robinson & Co. in the sum of $1015, due and payable; and, whereas, we are desirous of securing and paying said debt; now, therefore, we, for the above consideration, hereby bargain, sell, transfer and deliver unto the said J. M. Robinson & Co. all our stock of goods, etc.  *  *  *  *  *  *  To have and to hold unto said J. M. Robinson & Co., their heirs and assigns forever; and the said J. M. Robinson & Co. are hereby authorized to take absolute and exclusive possession of said property, sell the same at public or private sale, and out of the proceeds shall deduct and pay unto themselves said debt, together with interest and all reasonable costs of sale, and if any further or other amount of money shall remain of the proceeds of such sale, the said J. M. Robinson & Co. shall pay over such excess unto our creditors pro rata and equal, according to the amount of their debts against us." In discussing the instrument, this court, through Justice Gaines, say: "It is contended on behalf of appellees that the instrument is a mortgage and not an assignment, but we think it cannot be so held. A mortgage being merely intended as a security for debt, gives, under our system at least, merely a lien upon the property with or without a power of sale, leaves an equity of redemption in the mortgagor, and the surplus, if any, after the payment of the debt, within the reach of his creditors by due process of law. An assignment, on the other hand, conveys to the assignee the entire estate of the assignor in the property to be disposed of by the trustee in such manner as the assignor may have lawfully directed. A mortgagor may vacate the mortgage at any time by a payment of the debt, but by an assignment the property passes beyond the control of the assignor in any event. It is true that should a surplus remain after paying the debt a trust would result in favor of the assignor, and the assignee would hold it for his benefit, but this is a result not contemplated by these conveyances. Tested by this distinction, the conveyance under consideration is not a mortgage.

If it had provided that upon the payment of the debt of appellees it should be void, or had provided, after a sale of a sufficiency of the property to pay that debt, balance should be returned to the debtors, the construction claimed by appellees would be correct; but the conveyance contains no condition of defeasance and passes the property absolutely to appellants to be administered according to the purposes therein created. (1) To pay the debts of the appellants, then to distribute the balance of the net proceeds among the other creditors. This is an absolute transfer of the property, to be sold and proceeds applied to the payment of the debts and not merely a conditional transfer for the purpose of securing debts and defeasible upon condition of their payment. It may be that if nothing had been said as to the disposition of the balance which

had remained after paying the debt due appellees, the object of the conveyance being merely to secure the prompt settlement of that obligation, the law would have implied a defeasance and the instrument would have been treated as a mortgage. (Stiles v. Hill, Fontaine & Co., 62 Texas, 429; Watterman v. Silberberg, 67 Texas, 100.) But the surplus is by the instrument placed at the disposal of the trustees in the event there should be other creditors, and hence we think it must be considered an assignment."

It will be observed that this transfer was to a creditor. On the face of the instrument the intention appears to fix a preference upon the property for the purpose of paying the debt due J. M. Robinson & Co., and to sell same for that purpose; but it also went further and provided for an absolute distribution of all the proceeds of the sale left after paying said debt, among the creditors of the grantor, thereby evidencing an intention to divest the grantors of all title and interest in said property. It seems to be clear that the court considered this latter intent as sufficient to constitute the instrument an assignment. But for such intent the instrument would have been held to be a mortgage, for it would have left the instrument apparently upon an equal footing with that in Laird v. Weis Bros., above, if the expression that the instrument was "intended as a mortgage" be omitted from the latter. In such event there would have been nothing upon the face of the instrument to indicate an intent on the part of the grantor to pass the property absolutely to J. M. Robinson & Co., and in the absence of such intent "the object of the conveyance being merely to secure the prompt settlement of that obligation, the law would have implied a defeasance and the instrument would have been treated as a mortgage."

In the case of Hart & Co. v. Blum, 76 Texas, 113, the instrument, as there correctly stated by the court, is almost identical with that in Johnston v. Robinson, and no useful purpose would be subserved by setting it out here. Upon the authority of Johnston v. Robinson it was necessarily held to be an assignment.

In Preston v. Carter Bros. & Co., 80 Texas, 388, the instrument was substantially as follows: "Whereas, we are indebted to Mrs. J. B. Knickenbarger, S. B. Allen and several other persons hereinafter mentioned, and are desirous to pay all our debts so named out of the property hereby conveyed, now, therefore, in consideration of the premises, we, J. B. Phillips and F. A. Duncan, have bargained, sold. transferred and conveyed to Geo. A. Preston the following property: (Here follows description) in trust, however, that whereas, we are indebted to (here follows list of creditors.) Therefore, it is understood and agreed between the parties to this instrument that said Preston is to immediately take possession of and sell said goods, wares and merchandise for cash as rapidly as possible and collect the notes and accounts, and out of the proceeds of said sales and collections shall pay all debts owing by us to Nunnelee, Knickenbarger, Allen, Preston, as cashier, and in his own person, and Scarborough, paying their several claims in full and thereafter the

remainder of said proceeds of said sales and collections of notes shall be paid pro rata to all the other creditors to whom we are indebted as shown by our books." From this it will be seen that this instrument is practically the same as the one in Johnston v. Robinson, except that here the conveyance is to one of the preferred creditors. If it were not for the provision directing the payment of the balance of proceeds of sales among creditors, it would seem that the instrument would be almost identical with several of those above referred to, which were held to be trust deeds in the nature of mortgages. The provision, however, for the distribution of the entire surplus among creditors indicated an intention to divest the grantor of all title to the property and to appropriate the same unreservedly to the satisfaction of his debts and under the authority of Johnston v. Robinson it was therefore held to be an assignment.

The instruments in Boyd v. Haynie, 83 Texas 7, Foreman v. Burnette, 83 Texas, 399 and Burnham, Hanna, Munger & Co. v. Logan, Evans & Smith, 29 S. W. Rep. 1067, were all substantially the same as Johnston v. Robinson, except that in Boyd v. Haynie and Foreman v. Burnette the conveyance was to a trustee instead of to one of the preferred creditors.

The decision of all of these cases was but the application of the rule laid down in Johnston v. Robinson. The intent apparent upon the face of each instrument, not only to fix a preference lien and provide for its payment out of the property described in the instrument, but, in addition, to divest the grantor of all title and interest in the property, constituted the several instruments assignments.

We have thus briefly noticed, as we believe, every reported case in which this court has been called upon to determine whether a given instrument was a mortgage or trust deed in the nature of a mortgage, or an assignment, and have seen that each instrument has been held to belong to the former class except those construed in Johnston v. Robinson, and the line of decisions based upon its authority. We think it clear, as intimated in Johnston v. Robinson, that but for the intent apparent upon the face of each of these instruments, not only to create a preference lien on certain property in favor of named creditors to secure or pay same, but in addition thereto, to divest the grantor of all title and interest in the property, they too would have been held mortgages or trust deeds in the nature of mortgages.

We conclude from the above authorities that in determining the question as to whether a given instrument belongs to one class or the other, the court will be governed by the legal intent of the grantor as expressed in the language used therein, when read, in a proper case, in the light of the circumstances surrounding its execution. And where it appears from the face of the instrument, so read, that the intention of the grantor, therein expressed, was merely to charge the property therein described with a preference lien, either as a security or as a means of immediate payment of certain debt or debts therein specified, such instrument must be held a mortgage or deed of trust in the nature of a mortgage; but where,

in addition to such intention, there also appears from the face thereof an intent to thereby divest the grantor of and vest in the grantee all title and interest in the property for the purpose of providing for the immediate payment of such debt or debts, the instrument must be held an assignment. If only the first intention appears a condition of defeasance will, as a matter of law, be implied and the instrument read as if such condition were written therein; but if the second intent also, so appears, no such condition will be implied. ·

While it is true that a mortgage or trust deed in the nature of a mortgage does not, and an assignment does, divest the grantor of title, yet these are legal results flowing from the intent.

The intent is the thing to be determined. By this is meant the legal intent, and not merely an erroneous construction placed by the grantor on the instrument contrary to such intent clearly expressed therein.

Where, however, there is doubt as to the true legal intent courts have always given great weight to the construction placed upon the instrument by the parties thereto, whether such construction be evidenced by expressions on the face of the paper or by the subsequent acts of the parties thereunder. In such a case every expression on the face of the instrument, viewed in the light of the circumstances attending its execution, will be considered. The intimation that this court has ever held that any one clause or expression must, in all cases, be given controlling effect and allowed to override the clearly expressed intention of the grantor, is without support in and merely indicates a superficial consideration of its opinions.

In many of the cases above referred to expressions have been used in the opinions showing that the court considered the existence of a defeasance clause or a provision for the return of surplus of property or money as indicative of an intent to do no more than was expressly done on the face of the instrument i. e., to create a preference lien upon specified property to secure or provide for the payment of specified debts by sale thereof. So it is often said that the fact that the creditor or one of the creditors is the grantee, is strongly indicative of a mortgage and not of an assignment; but can it be fairly urged that any court ever intended by such expressions to hold that such isolated fact would control a clearly expressed legal intent to the contrary, especially in the face of the fact as evidenced by the cases above cited that such circumstance has often been ignored? We apprehend that if an insolvent were to convey all his property to one of his creditors in trust to sell same and distribute the proceeds pro rata among all his creditors according to the statute, the legal intent to make an assignment would be so clear that it would not be overturned by a provision for the return of surplus of property or money or even a declaration on the face of the instrument that the grantor did not intend to make an assignment, but a mortgage.

Let us discard for a moment the mist of theories with which this question has been attempted to be enveloped, and see if we can determine the intent of Duke and Dodson in executing the instrument set out in our

former opinion herein. It must be assumed that they were aware that, under the law of this State as declared by statute and repeated decisions of this court, they, being insolvent, could prefer creditors by mortgage or trust deed in the nature of a mortgage, but could not do so by an assignment. It is not to be lightly presumed that they deliberately intended to violate the express provision of the statute in attempting to create the preference provided for in the instrument. It is fair to presume that they intended to do a lawful thing. In applying this principle to the construction of an instrument in the case of Coffin v. Douglas, 61 Texas, 409, this court, through Justice Stayton, say: "The surroundings of the parties may be looked to in such a case for the purpose of ascertaining what they really intended by the language used. The parties evidently desired to make an assignment under the statute for the benefit of their creditors, and they are presumed to have known that such an assignment as it is claimed was made by them would be invalid and wholly fail to accomplish the purpose which they desired. The presumption, in the absence of language in the instrument showing a contrary intention, is that the assignors intended to make an assignment valid in law, and we are of the opinion that the language used in the deed, together with the mode of its execution, evidence the intention of each of the members of the firm to pass to the assignee by the deed all of the property either of them owned in his separate right or as a partner." And in applying the same principle in McKee v. Coffin, 66 Texas, 308, the same learned jurist said: "Kniffin knew or must be presumed to have known that the deed of assignment to be valid, must convey all the property which he and W. G. Kniffin owned as co-partners or otherwise, except such as the law exempted from forced sale. He must be further presumed to have intended to make a valid assignment." Again, it is an elementary rule that the court should not so construe an instrument as to nullify any of its provisions if another construction giving effect thereto can be adopted which is not clearly inconsistent with the language used in the entire instrument. Therefore, the very fact that the grantors inserted in the instrument detailed and careful provisions for the sole purpose of preferring creditors is to be considered by the court as indicative of an intent merely to create a preference lien to secure or provide for the payment of the debts therein mentioned, and not to make an assignment. The court has no right in searching for the intent to disregard these plain provisions. It is only when the court has reached the conclusion that the other language of the instrument evidences a legal intent by an insolvent or one contemplating insolvency to make an assignment that it, under the mandate of the statute, is required to disregard and hold for naught the clause creating preference. It must be admitted that this instrument under the authorities above cited would be clearly a trust deed in the nature of a mortgage, if the parties had so expressly stated their intention on its face. Then, is not the expressed intent to create preferences, in the absence of anything on the face of the instrument indicating an intent to divest the grantor of all his title and

interest in the property, under the rules of law requiring the court in case of doubt to hold the instrument lawful rather than unlawful, effective in whole rather than void in part, sufficient to constitute it a trust deed in the nature of a mortgage rather than an assignment? If this be not sufficient when there is added the provisions requiring the trustee (1) to sell and make deeds in the names of the grantors, thereby conferring a direct agency to bind them by the stipulations of such deeds and indicating that the grantors considered their names necessary to pass title; and (2) to return the surplus to the grantors, thereby indicating an intent on their part not to relinquish all interest in the property, especially when such reservation in such an instrument, under the repeated decisions of this court, has been held to be sufficient to authorize the implication of a defeasance clause, it would seem clear that the instrument cannot be held an assignment without coming in direct conflict with the settled principles of the decisions of our predecessors above quoted, which, in the judgment of the writer, bear unmistakable evidence of great wisdom. We are therefore of opinion that our former conclusion that the instrument in question is a trust deed in the nature of a mortgage was demanded by an unbroken line of previous adjudications in this State and based upon sound principle.

We do not understand it to be urged here that the mere fact that it was shown that the creditors named in the instrument were all the creditors of the grantors, would distinguish this case from those above discussed. Indeed, since it is settled by the above cases that an insolvent may by mortgage or trust deed in the nature of a mortgage, fix a preference lien on all his property in favor of practically all of his creditors, it would be quite technical to hold that the character of the instrument would be in law transformed by the mere fact that all of the creditors were mentioned.

The opposition to the principle of the above decisions is based upon the erroneous assumption that it was the policy of the act of 1879 to force an equal distribution of the assets of an insolvent among all his creditors; and from such basis it has been persistently urged that if the facts show that the instrument, no matter in what language couched, was executed after the insolvent or person contemplating insolvency, as a matter of fact, formed the intent to part with all dominion over his property for the benefit of any creditor or creditors, it must be held an assignment.

Had this construction of the statute been adopted, the whole matter would have been simplified and the courts would not have been for these many years engaged in the difficult task of trying to glean, from the varied and doubtful expressions in the instruments, the true legal intent of the grantor, for every instrument, no matter what its form, executed after the formation of the intent first above mentioned would have been held an assignment; and such person could not have conveyed his property in satisfaction of or to secure payment of certain debts as has been steadily ruled by this court in a uniform line of decisions based upon La

Belle W. Wks. v. Tidball, Van Z. & Co., 59 Texas, 292, sustaining a conveyance in payment of debts, and Stiles v. Hill, Fontaine & Co., 62 Texas, 429, sustaining one providing for their payment by sale of property, as a mortgage. In most, if not all, of the cases which have been before this court, and above referred to, the execution of the instrument was a practical cessation of business by the grantor, and if such construction of the statute had been adopted, it would virtually have deprived insolvents of the right to prefer creditors by transfer or mortgage. As said by Chief Justice Stayton, in Hudson v. Milling & Elevator Co., 79 Texas, 408, "If the Legislature deems it proper to prohibit any person solvent or insolvent, from giving preferences, through mortgages as well as through assignments, a law to that effect can be passed, but in the absence of such a law, this court cannot hold that a debtor may not give preferences through mortgages to secure just debts, if the same be done in good faith, although he be insolvent, simply because the Legislature has declared that such a debtor assigning all of his property for the benefit of all his creditors shall not give preferences," and "any other ruling would involve judicial legislation."

We have deemed it unnecessary to notice cases not involving the question before us or to search therein for expressions used with reference to other matters, for the purpose of bringing them to the support of our views herein expressed. There are many cases in our reports of this class. We have not thought it necessary to examine the original instrument in all of them, but in such as we have taken time to examine, the instruments bear on their faces such unmistakable evidence of being intended as assignments that no question could fairly have arisen as to their proper construction and none was made here. Since, however, it has been urged that our former opinion herein is in direct conflict with one of these cases—Fant v. Elsbury, 68 Texas, 1, opinion by Chief Justice Willie—we deem it proper to say, that an examination of that case, as reported, shows that the question before us was not involved and was not discussed either by counsel or by the court. The instrument is not set out in full in the opinion, but it declared on its face that the grantor being indebted in various sums which he was unable to pay and "being desirous of making an equitable distribution of property and effects among his creditors," in consideration of the premises grants, sells, assigns and transfers to Thomas Elsbury, his heirs and assigns, all his property of every kind, "excepting from the effects of this assignment" such articles as are exempt by law, in trust to take possession of and sell the property "hereby assigned" and out of the proceeds to pay all expenses of "carrying into effect this assignment," and all sums he may pay out "to protect from sacrifice the assigned property," and the trustee was directed "to prepare a detailed inventory of said property as early as practicable and file the same herewith." The instrument was treated by the parties in the court below and in this court as an assignment, contention of appellant being (1) that though an assignment, it was void because it attempted to prefer creditors; (2) that plain-

tiff never having executed the bond required by the statute, could not maintain the action as assignee. The opinion discusses these two questions and has reference only to the effect of preference clause in an instrument conceded to be an assignment under the statute and to the effect on such instrument of the failure of the assignee to execute the bond. It is proper to state that this case has not been cited in this court as having any bearing whatever upon the question before us, and we do not deem it necessary to make any further comment thereon.

It is contended that we were in error in holding in the original opinion that the exception to the sufficiency of the petition on account of its failure to allege the acceptance of any creditor under the instrument was well taken.

Plaintiff in his petition alleges that Duke and Dodson executed the instrument set out in our original opinion; that on the same day he accepted the trust and immediately took exclusive possession of the property to him in the instrument transferred and delivered; that by virtue of the instrument he became entitled to the possession of the property and to administer the same under the law for the benefit of creditors; that on the day of its execution he accepted the trust and proceeded to execute the same and was executing the same under the instrument until the 15th day of December, '91, while he was in the quiet and peaceable possession of the property in said instrument conveyed, Tittle, sheriff of Greer County, at the instance of the other defendants, seized and converted some of said property under a valid writ of attachment issued out of the District Court of Greer County in a suit by the other defendants against Duke & Dodson, grantors in said instrument.

Since the instrument under which Vanleer, the trustee, entered and held possession, was, in our opinion, a mere trust deed in the nature of a mortgage, he acquired no title thereby, but was the agent of grantors. Duke and Dodson in holding possession of the property, and his possession was their possession, and therefore the property was subject to levy at the suit of one of their creditors. If Duke and Dodson would have had no right to recover, how can the trustee, who shows affirmatively on the face of his own pleading, that he held merely as their agent, have any better right to recover than his principals would have had? In order to show a right in himself, the trustee should have alleged an acceptance at least by some creditor, whereby he would have shown that he held for some one else other than Duke and Dodson. In the absence of such an allegation, we are still of the opinion that the special exception was improperly overruled.

The motion for rehearing is overruled.

*Overruled.*