## JAMES–DICKINSON FARM MORTG. CO. v. GALBRAITH. (No. 8246.)

Court of Civil Appeals of Texas. San Antonio. June 26, 1929.

Rehearing Denied July 17, 1929.

H. L. Yates and E. T. Yates, both of Brownsville, for appellant.

C. K. Richards, of Brownsville, for appellee.

FLY, C. J. This is an appeal perfected by appellant from a judgment rendered in favor of appellee for the sum of $6,665.57 on the answers to special issues submitted to a jury by the court. The litigation was instituted by appellee against appellant.

[1] The covers of records often have printed on them, after the names of the parties, the words "appellant, plaintiff in error," and "appellee, defendant in error," and the clerk in preparing this transcript wrote after the names of the parties the same designations, as though they carried both designations. The statute is plain that when a party perfects an appeal he is the appellant and his opponent the appellee, and when a writ of error is applied for the party desiring it is called the plaintiff in error and his opponent defendant in error. This matter was deemed of sufficient importance to be demanded by statute and should be observed. Revised Statutes 1925, art. 2252.

The transcript in this case is quite voluminous, containing 280 typewritten pages, much of it, however, being taken up with copies of 135 assignments of error, which cover 60 pages, and 96 bills of exception, occupying 168 pages.

■ It was alleged in the petition that H. B. Galbraith, trustee for J. M. Barker, Hugo Milde, E. M. Owens, and Clarence Owens, had and held certain land, and appellant was engaged in the business of subdividing, colonizing, and selling real estate in Cameron county and other counties in Texas; that appellee, as trustee, held title to 481.27 acres of land out of the Esperitu Santo grant, partition share No. 36 of subdivision C, of the Paredes tract in Cameron county; that being desirous of subdividing and selling said land, appellee entered into an agreement by which appellant was to sell said land, appellee agreeing to obtain water for the irrigation of said property, and to construct all necessary canals, laterals, drains, and culverts incident to said irrigation, according to plans to be provided by the engineer of the water improvement district No. 5. Appellee further agreed to have the land surveyed and subdivided, and "the subdivisions duly mapped, properly dedicated, filed for record in the office of the county clerk of said county, and to construct the necessary roadways to and on said property, all in accordance with the terms and provisions of the contract." Appellant bound itself to sell not less than 100 acres in 90 days from the date of the contract, and 100 acres each 60 days thereafter, until the entire tract was sold, at $250 per acre, $100 in cash and the balance of $150 in vendor's lien notes. It was further alleged that appellee proceeded to comply with all the provisions of the contract relating to him, and had expended in connection therewith the sum of $34,152.39, and that appellant had accounted to appellee in the sum of only $50 an acre on $416.42 as sold by them, and that appellant was due appellee the sum of $13,331.89. Appellant filed a general demurrer and eleven special exceptions to the petition, and filed an answer stating that they sold 214 acres of the 280 acres of land and received therefor $250 per acre

and paid the same to appellee and owed nothing more to appellee.

The jury found that it was agreed between the parties prior to the making of the contract, "and as evidenced by paragraph XIII of said contract, that if the cost of making the improvements contained in sub-paragraphs b, c, d and e, of paragraph XIII of said contract, should exceed the sum of $50.00 per acre then defendant was to account to and pay over to plaintiff the difference between the actual cost of said improvements referred to and the sum of $50.00 per acre on all the acreage sold, and to be sold, by defendant under said contract." The cost of the improvements on the land was not usual, reasonable, just, and the reasonable market price for the same; that the just, reasonable, usual, and market value of the improvements per acre was $63.85; that the trustee notified appellant that the cost of improvements was in excess of $50 per acre, and appellant still proceeded with selling the land and asked for deeds to land sold by them.

It is provided in the thirteenth clause of the contract between appellant and appellee: "In the event that the above enumerated items of cost exceed the sum of fifty dollars ($50.00) per acre, then and in that event it is agreed and understood that adjustment shall be made on the last 280 acres to be sold, so that the total amount to be accounted for by vendee herein to vendor herein on each and every acre so sold, shall be the sum of two hundred and fifty dollars ($250.00) per acre— vendee accounting to the vendor herein for the proportionate amount less than two hundred ($200.00) dollars per acre on the last two hundred and eighty (280) acres to be sold, so as to equalize the excess over two hundred dollars ($200.00), if any, paid on the two hundred (200) acres so first sold."

The contract provided that appellee was to receive $250 per acre for the land, which should be paid to appellee, which intended to include $200 net to appellee, and the other $50 to cover cost of improvements, taxes, and assessments, and that provision was followed by the clause copied herein. The judgment was for $13.85 an acre, the difference between $50 an acre for the estimated expenses and the $63.85, the real cost of the improvements found by the jury.

Appellant was informed that the cost per acre was greater than $50, and with that knowledge still sold the land and demanded and received deeds to the parcels of land. There were 64 acres of land that were not sold.

The thirteenth section is quite ambiguous, and in order to clear it of the doubt and ambiguity oral evidence was permitted to show the intention and desire of the parties as moving to the insertion of the section, and the reason for its insertion. A. D. Dickinson, Jr., one of the appellants, swore that he wrote paragraph 13 of the contract, and interpreted it as meaning that appellants were to have a rebate on the $50 cost if the actual cost was under $50 an acre. He stated: "I put that paragraph 13 in there on the agreement that we were to stand up to $250.00 an acre for everything, but if it was built for less—and we had just built a canal similar for forty-seven or forty-eight dollars an acre—then we were to get a rebate. We discussed at that time in case the cost exceeded $50.00 an acre. The canal costs were discussed on the basis of the one we had just built. We were to pay $250.00 an acre for the land, but if they could build the canals for less we were to get it back." According to that witness, the provision only for paying a rebate to appellants was rather a non sequitur to a discussion of the question as to what should be done in case the cost exceeded $50 an acre.

Clarence Owens, for appellee, testified: "There was also a discussion with reference to the cost of this construction if it should exceed fifty dollars an acre, by whom it was to be borne, or if it was less than fifty an acre whether anybody was to get a rebate. If it was under fifty dollars an acre James-Dickinson was to benefit by that amount, and if it were in excess of that they were to pay it. That discussion was had before the signing of the contract, while all of us were sitting there by the table, and the contract was entered into and signed immediately afterwards, at the same meeting."

Following the discussion, as stated by Dickinson, he prepared paragraph XIII, which provided for an equalization in case appellee after deducting costs received less than $200 per acre net on the last 280 acres of land. Evidently it was the intention of the parties that appellee should be repaid all the cost of the improvements on the land, whether it amounted to $50 an acre or more. The evidence sustained that conclusion and the jury so found.

The evidence offered as to the agreement leading up to the signing of the contract, and in pursuance of which paragraph XIII was prepared by Dickinson, did not seek to vary the terms of the written contract, but merely to explain obscure and ambiguous parts of the contract. The doubtful paragraph in the contract was in the language of appellant. Faulk v. Dashiell, 62 Tex. 642, 50 Am. Rep. 542.

It is the rule that when an instrument is ambiguous and of doubtful construction, resort can be had to parol testimony as to surrounding facts connected with its execution, not to vary or contradict the terms of the instrument, but to explain its purpose and meaning in order to arrive at the intent of the makers. Roberts v. Short, 1 Tex. 373; Haldeman v. Chambers, 19 Tex. 1; Hunt v. White, 24 Tex. 643; Smith v. Crosby, 47 Tex. 121; Watrous v. McKie, 54 Tex. 65; Astugueville v. Loustaunau, 61 Tex. 233; Miller v. Rail-

way, 65 Tex. 659; Tittle v. Vanleer, 89 Tex. 174, 29 S. W. 1065, 34 S. W. 715, 37 L. R. A. 337.

As said in the last case cited: "Where, however, there is doubt as to the true legal intent courts have always given great weight to the construction placed upon the instrument by the parties thereto, whether such construction be evidenced by expressions on the face of the paper or by the subsequent acts of the parties thereunder." In this case appellee informed appellant first in a conversation, and afterwards in writing, of his construction of the contract, and appellant not only did not combat the construction, but continued to carry out the contract, at no time repudiating the construction placed upon it by appellee.

The thirteenth paragraph of the contract, written by Dickinson, and added to the contract, guarantees to appellee $200 net, after deducting all expenses, and then provides for "adjustments" out of the sale of the last 280 acres of land in case the "enumerated items of cost exceed the sum of fifty dollars per acre." It is also provided that appellant shall account to appellee "for the proportionate amount less than two hundred ($200.00) dollars per acre on the last two hundred and eighty (280) acres to be sold." Dickinson construes that paragraph to mean that appellants were to get all over $250 per acre. The lower court thought otherwise, and this court agrees with the view of the trial court.

There were 64 acres of land remaining unsold, and under the terms of the contract, which did not provide for any penalty in case all of the land was not sold, we conclude that appellee should not collect the $13.85 per acre on the 64 acres remaining unsold. The amount on the 64 acres would be $916.40, which should be deducted from the judgment for $6,665.57, leaving the sum of $5,749.17.

The judgment will be amended so as to reduce the principal to $5,749.17, the same to bear interest from date of the judgment of the trial court, and as amended will be affirmed.

Amended and affirmed.