A. J. Hudson et al. v. C. Eisenmayer, Sr., Milling and Elevator Company et al.

No. 2929.

1. **Parties—Suit to Set Aside a Deed of Trust.**—All beneficiaries adversely interested to the plaintiffs are necessary parties defendant in a suit by a part of the beneficiaries to set aside a trust deed giving preference to creditors in the order named in it. Those having priority over the plaintiffs are adversely interested and can not be represented by them in such suit.

2. **Insolvency of Partnership.**—The court finding the firm to be insolvent, and also finding that as to one of the two members there was no testimony to his financial condition, it can not be assumed from these findings that the persons who composed the firm were insolvent.

3. **Assignments by Solvent Firms.**—Assignments made by solvent persons are not within the control of the statute regulating assignments, for it applies only to assignments made by "an insolvent debtor, or in contemplation of insolvency."

4. **Practice.**—In a suit by creditors to set aside a deed of trust preferring other creditors, and to have it declared an assignment to be administered under the general assignment law, it devolves upon the plaintiffs to prove that the makers were insolvent or contemplating insolvency at the time it was executed.

5. **Cases Adhered to.**—Johnson v. Robinson, 68 Texas, 399, and Waterman v. Silberberg, 67 Texas, 106, adhered to touching the difference between an assignment for the benefit of creditors and a mortgage.

6. **Preferences by Creditors.**—It must be presumed that the Legislature understood the difference between assignments for the benefit of creditors and mortgages to secure debts, and it can not be held that the Legislature intended the declaration that "any attempted preference of one creditor or creditors of such assignor shall be deemed fraudulent and without effect" should operate a denial, even to an insolvent, of the right to make a mortgage whereby some creditors are preferred.

Appeal from Washington. Tried below before Hon. John Alexander, Special District Judge.

The opinion states the case.

*Bassett, Seay & Muse,* for appellants.— 1. The court erred in construing the instrument in controversy to be a statutory assignment and in awarding judgment for the plaintiffs on that theory, because:

(1) On its face said instrument was not a statutory assignment, but was what it purports to be, a valid deed of trust or common law assignment executed by a mercantile firm, whereby they conveyed, as they lawfully might, a designated portion of their partnership property for the benefit of certain of their creditors specifically named.

(2) It affirmatively appears from the court's conclusions of fact that said instrument, if an assignment at all, was a partial and not a general assignment, for the reason that all of the creditors of the makers were not and were not intended to be provided for, and that all of their property was not and was not intended to be conveyed to the assignee.

(3) The instrument did not in terms nor by fair implication convey

the individual property of the maker, P. W. Hunt, nor provide for his individual creditors.

(4) Said instrument not being signed by W. V. Hunt in person, and his copartner and agent by whom it was signed having no authority to convey anything more than the stock of goods specified in the power of attorney for the payment of partnership debts, no implication can arise that the individual property of said W. V. Hunt was or could have been conveyed by the instrument, or that his individual debts were or were intended to be thereby provided for.

2. The court by its judgment construed the instrument to be a general statutory assignment, and ordered the trustee to administer it as such for the equal benefit of all of the creditors of Hunt & Co.

(1) Unless upon the facts found this court shall construe the instrument of November 5, 1888, to be a statutory assignment the appellees have confessedly no standing in court, and the judgment below must be reversed and judgment be here rendered for the appellants.

(2) To construe the instrument as a statutory assignment would be to disregard the obvious intent of the parties, which was to convey to the trustee in trust for certain designated creditors, in the order of preference named, a designated portion of their partnership property. Moreover the instrument does not upon its face indicate that the makers were either insolvent or contemplating insolvency. It does not purport to convey all of the nonexempt property of the firm, nor to include all of their creditors; it does not in terms nor by fair implication embrace the individual property of P. W. Hunt, nor provide for his individual creditors. Johnson v. Robinson, 68 Texas, 399, 401, 402; Donoho v. Fish Bros., 58 Texas, 164; Kittrell v. Blum, 77 Texas, 336; Turner v. Douglass, 77 Texas, 619; Hart v. Blum, 76 Texas, 113; Shropshire v. Behrens, 77 Texas, 275.

(3) The authority conferred by the power of attorney of W. V. Hunt under which P. W. Hunt acted in executing the instrument must be strictly construed (Gouldy v. Metcalf, 75 Texas, 455), and so construed it would not have authorized the conveyance of the individual property of W. V. Hunt had such been attempted.

(4) It affirmatively appearing from the court's conclusions of fact that all of the partnership creditors were not and were not intended to be provided for, and that all of the partnership property was not and was not intended to be conveyed to the assignee, and that P. W. Hunt had property which was not conveyed, and it not appearing but that W. V. Hunt, who resided in a distant county, may have been amply solvent, the court below should have construed the instrument as a trust conveyance or common law assignment, and erred in holding it to be a statutory assignment.

3. The court erred in overruling the defendants' plea in abatement and their exceptions to the plaintiffs' petition, and in rendering judgment for the plaintiffs, because:

(1)   The preferred creditors whose preferences under the instrument were challenged by plaintiffs and set aside by the court were necessary parties to the suit in which their rights were thus assailed and denied. Hall v. Harris, 11 Texas, 303; Speake v. Prewitt, 6 Texas, 257.

(2)   If as contended the instrument was a statutory assignment, the plaintiffs would still be without standing in the court, it not appearing that they had accepted its benefits or proved up their claims as required by the assignment law to entitle them to share in the distribution of the assets.   Sayles' Civ. Stats., arts. 65e, 65g; Wynne v. Hardware Co., 67 Texas, 41.

*Searcy & Garrett,* for appellees.—1.   (1)   Every assignment made by an insolvent debtor, however made or expressed, has the effect of transferring all of the property of the assignors not exempt from forced sale for the benefit of all of the creditors of the assignors.

(2)   The question to be determined by the court was as to the solvency or insolvency of Hunt & Co. at the time of the execution of the instrument, and the court having found that they were insolvent, the law then determines the character of the instrument.

(3)   Any attempt on the part of an insolvent debtor to prefer one creditor over another is void as to the preference.

(4)   W. V. Hunt having executed a power of attorney to P. W. Hunt to sign his name to a general assignment or any other instrument that he might deem best transferring their property, made said instrument as effectual as if the said W. V. Hunt had signed the same in person, and passed all of the property belonging to P. W. and W. V. Hunt not exempt from forced sale for the benefit of their creditors.   Sayles' Civ. Stats., arts. 65a, 65s; Fant v. Elsbury, 68 Texas, 1.

2.   In the case of Johnson v. Robinson, 68 Texas, 399, the court simply decides that a deed of assignment which contains nothing on its face to show that the assignor was insolvent or in contemplation of insolvency is not a statutory assignment, but says: "There is no assignment of error which submits the proposition that the evidence puts a different aspect upon the instrument in controversy from that shown upon its face.   We are not called upon therefore to consider it in the light of the parol testimony which was adduced upon the trial."   In this case the court found from the evidence adduced upon the trial that Hunt & Co. were insolvent at the time of the execution of the instrument.

In the case of Donoho v. Fish Bros., 58 Texas, 164, only one of the partners signed the instrument.   In this case P. W. Hunt had a full power of attorney from his brother, W. V. Hunt, authorizing him to act.

In the case of Kittrell v. Blum, 77 Texas, 336, the assignment was signed by only one of the partners, who had no power of attorney from the others.

In case of Turner v. Douglass, 77 Texas, 619, it is simply held that an assignment providing for releases by creditors will not be held valid when made by a partnership unless all its members unite in making it.

The case of Shropshire v. Behrens et al., 77 Texas, 275, is where a corporation attempted to make an assignment, and the court held that the signature of the president without attaching the corporate seal did not convey the real estate belonging to the corporation.

In the case of McKee v. Coffin, 66 Texas, 304, it was held that an assignment might be made by an agent duly authorized, and also that a ratification of it before the levy of an attachment would be good against the levy.

3.   This simply being an action to have the instrument construed, it was not necessary to make any one except the trustee or assignee a party.

Creditors have six months after notice given by the assignee to accept of the assignment and file their claims with the assignee, and if the assignee denies the instrument to be an assignment and refuses to give the notice as required by the statute, the creditors have a right to appeal to the court for a construction of the instrument in order that they may accept under it and receive the benefits of the same.    Sayles' Civ. Stats., art. 65g.

STAYTON, CHIEF JUSTICE.— On November 5, 1888, P. W. and W. V. Hunt, partners in a mercantile business, conveyed to A. J. Hudson all their stock of merchandise and claims due them, "to have and to hold the above described property to him, the said A. J. Hudson, his heirs and assigns forever; in trust, however, for the following purposes, viz: Whereas that we, the said P. W. Hunt and W. V. Hunt, are indebted to the following named persons in the sums stated herein, to-wit:

"First.   To C. R. Breedlove, of Brenham, Texas, in the sum of $460, secured and evidenced by our promissory note payable one day after date to the order of C. R. Breedlove, with 1 per cent per month interest from date until paid, and which note has a credit endorsed of $153.08, April 20, 1888, which note is signed by P. W. Hunt alone.

"Second.   To all of the hereinafter named parties in the sums set opposite their names, to-wit." (Here follows a list of creditors numbered from 2 to 65, inclusive, including the several plaintiffs in this suit.)

"Now for the purpose of paying the above described notes and evidences of indebtedness to the above named persons in the order named and described herein, the said A. J. Hudson is hereby authorized and fully empowered to take immediate possession of all of the foregoing and above described property and to sell the same for cash, and out of the proceeds arising from the sale of said property to pay all of the above-named debts in the order herein named owing by us as aforesaid; and said debts shall be paid off in the order named as fast as sales can be made and funds

can be obtained from sales of said goods, wares, and merchandise; and said A. J. Hudson shall pay all necessary expenses that may be incurred by him in selling said property (said expenses not to exceed $250 per month); and in making sales of said property the said A. J. Hudson is hereby authorized to sell the same in bulk or in parcels, or partly both ways, as to him may seem best; provided, however, that the whole of said property shall not be sold at one time unless twenty days notice of the time and place of such sale shall be given by a notice printed in the Daily Banner, a newspaper printed at Brenham, Texas; and provided further, that said A. J. Hudson shall sell all of said goods, wares, and merchandise above described for the payment of the aforesaid debts within ninety days from the date hereof.

"This conveyance and delivery of property as herein set forth and enumerated is intended as a mortgage to secure the payment of the claims and debts as herein named in the order as named and to indemnify our said creditors above named; and when a sufficient quantity of said goods, wares, and merchandise shall have been sold to pay off and fully discharge all of the above enumerated claims and in the order named, and all necessary expenses incident to the sale of the same, then the remainder of such goods, wares, and merchandise, or any proceeds of such sale remaining shall be returned to us.

"In testimony of all which we hereto sign our names this 5th day of November, A. D. 1888.

"P. W. HUNT,

"W. V. HUNT,

"per P. W. HUNT, attorney in fact."

None other than partnership property was embraced in the instrument, nor would the power of attorney executed by W. V. Hunt, under which P. W. Hunt acted in executing it, have authorized the latter in any manner to make an instrument affecting the individual property of the former.

Appellees, who were some of the beneficiaries under the instrument, brought two suits against A. J. Hudson and W. P. and W. V. Hunt, the purpose of which was to have the instrument declared an assignment under the statute for the equal benefit of all creditors and to have it so enforced.

Why the two suits were brought does not appear, but they were consolidated before trial.

The prayer for relief was "for themselves and for any other bona fide creditors of said Hunt & Co. who may establish the justice of their claims."

Plaintiffs were six of the creditors named in the instrument, but no others were made parties, although there were sixty-five creditors named, many of whom, under the terms of the instrument, would be entitled to payment prior to plaintiffs.

The petition alleged that the property in the hands of Hudson was insufficient to pay the claims which the instrument was given to secure.

The defendants pleaded in abatement the nonjoinder of the other secured creditors, but the court on hearing overruled the plea.

We are of opinion that this was error.

If it could be claimed that this was a suit by some of the creditors of Hunt & Co. in behalf of all, the facts would not justify the maintenance of such a suit by plaintiffs alone, for their pleadings show that all creditors whose names precede theirs on the list are entitled to preference under the terms of the instrument, and the purpose of this suit is to destroy that preference.

The interests of all creditors given right to priority of payment over plaintiffs is adverse to theirs, and plaintiffs for this reason can not represent them in a suit the purpose of which is to divest their rights. Hall v. Harris, 11 Texas, 303; Perry on Trusts, 873–885.

If there be exceptions to the general rules stated by this author, it is not now necessary to consider them; nor would the ruling require more than the reversal of the judgment.

The court found that Hunt & Co. were insolvent at the time the conveyance to Hudson was made; that P. W. Hunt owned some property in his individual right other than that exempt, but the intimation is that this was of small value, and expressly found that "there was no evidence before the court as to the individual property owned by or the individual debts of W. V. Hunt."

The aggregate of claims named in the instrument was $14,137.03, and the court found that the estimated value of the property embraced in it did not exceed $6400. In fact only $2525.05 seems to have been realized from the assets.

On final hearing the instrument was held to be a general statutory assignment and it was ordered to be administered as such for the equal benefit of all the creditors without preferences.

While the court found that "Hunt & Co." were insolvent, under the other findings it must be held that this did not amount to a finding that the persons who composed the firm were insolvent, for the court expressly found that there was no evidence showing what property W. V. Hunt owned.

So long as the persons composing a copartnership are solvent the firm of which they are members can not be said, within the meaning of the statute regulating assignments, to be insolvent, for every member of a firm is bound for the payment of all its debts.

Assignments made by solvent persons are not within the reach of the statute, for that applies only to assignments made "by an insolvent debtor or in contemplation of insolvency." Sayles' Civ. Stats., 65a; Johnson v. Robinson, 68 Texas, 399.

The burden of proving all the facts necessary to show that the instrument in question should be construed to be an assignment under the stat-

ute rested on plaintiffs, and as the instrument does not on its face show such an assignment, it was necessary, in order to establish this to be its character, to prove that its makers were insolvent or in contemplation of insolvency at the time it was executed; for otherwise, even if the instrument could be deemed an assignment either partial or general, it would. not be under the control of the statute.   Johnson v. Robinson, 68 Texas, 399; Blum v. Welborne, 58 Texas, 161.

This is not a case in which plaintiffs are seeking to set aside a conveyance, but one in which they seek to have it stand and to enforce it as construed by the court, and it is therefore unnecessary to enter into any question as to its validity.

The difference between an assignment for the benefit of creditors and a mortgage is clearly stated in Johnson v. Robinson, and in Watterman v. Silberberg, 67 Texas, 106.

The one passes the title to the assignee, but the other only creates a lien to secure a debt, which may be enforced through foreclosure proceedings or by sale under a power conferred by the instrument.

If property be conveyed in mortgage any creditor of its maker may cause it to be seized in such manner as the law prescribes and sold under execution in satisfaction of his demand, but if it has been assigned for the benefit of creditors it has ceased to be subject to such seizure and sale, simply because it has ceased to be the property of the assignor, and creditors must then enforce such rights as they may have through the assignment or in the manner prescribed by the statute.

The instrument before us is in form strictly a mortgage, and had it been shown that its makers were insolvent we would not be authorized to hold that it was an assignment.

The purpose of the instrument was to secure as far as the mortgaged property would the payment of the debts enumerated in it, and it contains a reservation of right to any surplus. ·

The payment of the enumerated debts would have canceled it or deprived it of any effect, and the property would have stood as though it had never been executed.

Such instruments have steadily been held to be mortgages.   Stiles v. Hill, 62 Texas, 430; Jackson v. Harby, 65 Texas, 710; Baldwin v. Peet, 22 Texas, 718; Watterman v. Silberberg, 67 Texas, 100.

To hold otherwise would be to do violence to the settled principles of the law, as well as to the intent of the parties.   The object in this case is to have that which is clearly a mortgage and nothing else declared a general assignment for the benefit of creditors.

This can not be claimed from the language used in the instrument, nor from the evident purpose for which it was executed.   That purpose was to secure as far as the property would the payment of enumerated debts, and to give some of them priority of others.

. The real ground on which this claim is made doubtless is that such conveyances to secure debts are illegal, because in contravention of the statute regulating general assignments.

It must be presumed that the Legislature understood the difference between assignments for the benefit of creditors and mortgages to secure creditors, and it can not be held that the Legislature intended the declaration that "any attempted preference of one creditor or creditors of such assignor shall be deemed fraudulent and without effect" should operate a denial, even to an insolvent, of the right to make a mortgage whereby some creditors would obtain over others preference.

This case, as well as others that have been before this court, however, have proceeded upon the theory that such was the effect of the language above quoted, which is found in the law regulating general assignments.

The contrary has been steadily held. La Belle v. Tidball, 59 Texas, 291; Stiles v. Hill, 62 Texas, 430; Watterman v. Silberberg, 67 Texas, 100, and cases cited. Any other ruling would involve judicial legislation.

If the Legislature deems it proper to prohibit any person, solvent or insolvent, from giving preferences through mortgages as well as through assignments, a law to that effect can be passed, but in the absence of such a law this court can not hold that a debtor may not give preferences through mortgages to secure just debts if the same be done in good faith, although he be insolvent, simply because the Legislature has declared that such a debtor assigning all his property for the benefit of all his creditors shall not give preferences.

We think the court below erred in holding that the instrument in question operated as a general assignment; and that if it had not erred in this respect, there was error in holding that it would have been governed by the law governing general assignments by insolvents, for there was no proof of insolvency of the makers of the instrument; and further in not holding that at least some of the creditors not before the court were necessary parties.

We have not deemed it necessary to consider the fact that the instrument did not purport to convey any but partnership property.

For the errors noticed the judgment of the court below will be reversed and here rendered for appellants.

*Reversed and rendered.*

Delivered January 30, 1891.

Justice Gaines did not sit in this case.