MILLS et al. v. PESSELS.

(Circuit Court of Appeals, Fifth Circuit. January 23, 1893.)

No. 50.

1. PREFERENTIAL ASSIGNMENTS—MORTGAGE—EVIDENCE.

B., an insolvent merchant, conveyed a stock of goods of the value of $63,000 to a trustee, requiring him to sell the same, and out of the proceeds pay certain scheduled creditors, making preferences between several classes of the creditors; the balance, if any, either of money or goods unsold, to be paid over or delivered to the grantor. B. then owed about $210,000, and had assets, exclusive of the stock of goods conveyed to the trustee, amounting to about $51,280. He did not intend to redeem the

stock, but intended the trust solely as a fund to pay the creditors. *Held*, that the transaction amounted to a mortgage to secure creditors, and was not a partial assignment preferring creditors, forbidden by the laws of Texas.

**2. Same—Fraudulent Conveyances—Provision for Attorneys' Fees.**

The fact that the conveyance secured a fee of $2,500 to the attorneys preparing the conveyance and rendering legal services in and about the trust to the grantor, did not render it fraudulent and invalid as to unsecured creditors.

**3. Same—Withdrawal of Attorneys' Claim.**

An agreement entered into between the grantor, the attorneys, and one of the secured creditors, by which the attorneys withdrew their claim in so far as it affected the claim of the creditor mentioned, could not affect the validity of the conveyance with respect to the other creditors thereby secured.

In Error to the Circuit Court of the United States for the Northern District of Texas. Affirmed.

M. L. Crawford, for defendant in error.

Before PARDEE, Circuit Judge, and LOCKE, District Judge.

PARDEE, Circuit Judge. On November 25, 1890, B. K. Brockinton made a deed of trust conveying to G. Pessels, trustee, a certain stock of goods, wares, and merchandise, situated in Hillsboro, Tex., to secure certain named creditors in amounts aggregating about $98,000. Pessels at once took possession as trustee, and was proceeding to execute the trust, when the plaintiffs in error instituted a suit in the circuit court against B. K. Brockinton to recover an alleged indebtedness of $4,947.58, and in said suit caused a writ of attachment to be issued out of said court with garnishment process against Pessels, trustee. The issue made by the pleadings was whether the conveyance from Brockinton to Pessels, trustee, was or not fraudulent as against other creditors of Brockinton. Upon the trial, the parties, by stipulation in writing, waived a jury, and submitted the case to the court. The court, after hearing the evidence, made the following findings of fact and law:

"First. Plaintiffs, Mills & Gibb, a firm composed of P. L. Mills, John Gibb, and William T. Evans, citizens of the state of New York, sued B. K. Brockinton, a citizen of the state of Texas, in this court, on December 22, 1890, for $4,947.58, in cause No. 453, and sued out an attachment against said Brockinton on the ground that he had disposed of his property for the purpose of defrauding his creditors, and caused a writ of garnishment to be served on defendant, G. Pessels, as a debtor of said Brockinton, or has having effects of said Brockinton in his possession; and on April 30, 1891, plaintiffs recovered judgment against Brockinton for the sum of $5,079.54 and costs.

"Second. On November 25, 1890, Brockinton conveyed to G. Pessels his entire stock of goods, wares, and merchandise in Hillsboro, Texas, in trust, requiring him to sell the stock as speedily as possible, and to the best advantage, for cash, at either public or private sale, and out of the proceeds, after paying the expenses of executing the trust, to pay in full certain creditors in Schedule A, viz.: Crawford & Crawford, $2,500; the H. B. Claflin Co., $10,-104.76; Bernheim, Bauer & Co., $14,141.49; A. C. Bernheim, $20,300; Sturgis National Bank, $23,000; Hill County National Bank, $5,700; F. B. Q. Clothing Co., $618.85,—aggregating $76,365.10; and, after paying certain creditors, then out of the balance, if any, to pay in full certain creditors named in Schedule B, whose debts aggregated $3,704.44; and, after paying these creditors, then

out of the balance, if any, to pay in full certain creditors named in Schedule C, whose debts aggregated $18,102,—in all, $98,171.54; and, after paying said debts, then to redeliver to Brockinton all of said goods unsold, or all sums of money being the proceeds of such sales remaining in said Pessel's hands; the instrument further stating that 'it is the intent and purpose of this mortgage to secure and pay in full my creditors hereinbefore named.' This deed of trust was delivered to G. Pessels, and was accepted by him, and it was duly filed for registration immediately on November 25, 1890, at 9 o'clock P. M. Thereupon Crawford & Crawford, G. Pessels, acting as agent for the H. B. Claflin Co., and J. D. Crawford, acting for Bernheim, Bauer & Co.,' A. C. Bernheim, and F. B. Q. Clothing Co., whose agent he was, indorsed their acceptance on said instrument, and they were all the creditors who accepted up to the time the instrument next mentioned was filed for registration, November 26, 1890; and after that certain creditors in Class B, whose debts were as follows: L. Gowan, $1,200; A. S. Johnson, $1,250; and C. K. King, $600,—indorsed their acceptance of said instrument, and these were all the creditors who accepted, there being no proof that any other creditors had accepted the instrument, except the Sturgis National Bank, as hereinafter mentioned.

"Third. A few hours later, B. K. Brockinton, Crawford & Crawford, and the Sturgis National Bank entered into a written agreement, stipulating that the Sturgis Bank agreed to the deed of trust with the understanding that the claim of Crawford & Crawford for $2,500 should be withdrawn as a preferred claim in so far as it affected the claim of the Sturgis Bank, and 'that, after the property shall be sold by the trustee,' referring to the deed of trust, 'then, if any money shall remain in his hands, he shall pay over the same to whomsoever in law shall be entitled to receive the same.' This was duly registered as a chattel mortgage, November 26, 1890, at 3:30 o'clock A. M. Pessels was informed of it in the morning of that day.

"Fourth. B. K. Brockinton, at the time of the execution of the deed of trust, owed about $210,000, and was insolvent, and unable to pay his debts as they matured. His assets consisted of the merchandise conveyed by the deed of trust, which cost originally about $100,000, but was afterwards sold by the trustee for $63,000, and was of the value of about $63,000; notes and accounts amounting to $100,000, valued at $25,000; compress stock, $25,000; real estate, estimated at $1,280. At the time he conveyed the merchandise he did not intend to redeem the same, or to pay off the debts preferred in the deed of trust, because he was not able to, but conveyed it to the trustee to secure the creditors named, with the intention of thereby raising a fund to pay off the debts specified in the deed of trust. The trustee knew he was insolvent, and could not intend to redeem, as did also the creditors preferred in and accepting the deed of trust.

"Fifth. The deed of trust was prepared by Messrs. Crawford & Crawford, attorneys at law, and the debt of $2,500 to them, secured in the deed of trust, was for their services in advising about and preparing the instrument; and Crawford & Crawford, in consideration of this debt of $2,500, afterwards represented Brockinton in various attachment suits brought against him by his creditors. Said fee was reasonable, in view of the services rendered. The trustee made a separate contract for the services of Crawford & Crawford in his own behalf in his fiduciary capacity.

"Sixth. The facts as to this fee of $2,500 were known to the trustees and to the creditors above mentioned, and who accepted the deed of trust; and the agreement above recited, made by Crawford & Crawford, Brockinton, and the Sturgis Bank, was entered into because the attorneys of the Sturgis National Bank entertained doubts as to whether this attorneys' fee could be legally provided for in the deed of trust, and so they insisted on said agreement in behalf of the Sturgis Bank. The court refused to find the conclusions of law as requested by plaintiffs, but finds as follows from the above stated facts:

### "Conclusions of Law.

"First. The court finds the instrument in controversy was not a partial assignment, but a deed of trust in the nature of mortgage.

"Second. The deed of trust, in connection with the written agreement of November 26, 1890, is not a partial assignment, but a mortgage.

"Third. That said instrument, being a mortgage, is not in contravention of the statute regulating assignments for benefit of creditors.

"Fourth. The debt of $2,500, if void of itself, did not affect the deed of trust.

"Fifth. The reservation of the surplus did not vitiate the deed of trust.

"Sixth and Seventh. Judgment should be rendered in favor of the defendant for costs and a reasonable compensation, to which rulings of the court plaintiffs then and there excepted in open court, and tender this, their bill of exceptions, and pray that the same may be approved under the hand and seal of the court, and enrolled as part of the record of this cause."

The counsel for the plaintiffs moved the court to find as conclusions of law from the facts with reference to the issues the following:

"First. That the instrument in controversy, being a conveyance of only a part of B. K. Brockinton's property to a trustee for the benefit of only a part of his creditors, he having a large amount of other property, and owing a large amount of other debts, and being insolvent, and entertaining an intention not to pay off the preferred creditors out of his other property, and redeem said conveyed property, is not a deed of trust in the nature of a mortgage, but is a partial or special assignment for the benefit of creditors.

"Second. That said deed of trust, in connection with the written agreement entered into by B. K. Brockinton, Crawford & Crawford, and Sturgis National Bank, is a partial assignment, and not a mortgage.

"Third. That said instrument or instruments in writing, being a partial assignment, as aforesaid, is in contravention of the statutes of Texas regulating assignments for the benefit of creditors, and is prohibited thereby, and is null and void.

"Fourth. That the debt of $2,500 of Crawford & Crawford was fraudulent and illegal as against the creditors of B. K. Brockinton, and entirely avoided the deed of trust.

"Fifth. That the reservation of B. K. Brockinton in the deed of trust aforesaid of the surplus of goods or money remaining after executing the trust therein mentioned is illegal and fraudulent as against his creditors, and rendered said instrument void.

"Sixth. That, as the goods conveyed to the defendant sold for $63,000, and the debts of the creditors who accepted before November 26, 1890, amounted to only $47,665, the balance was subject to the garnishment of plaintiff.

"Seventh. That judgment should be rendered in favor of plaintiffs against the garnishment for the amount of their judgment against B. K. Brockinton, interest and costs."

Judgment having been given in accordance with the findings of fact and conclusions of law, the plaintiff sued out this writ of error, and asked the court to review the case on the following as signments of error:

"(1) The court erred in refusing to find the conclusions of law requested by plaintiffs in error in their motion for findings of conclusions of fact and law, filed in said cause on December 3, 1891, to which motion reference is made for the finding so requested.

"(2) The court erred in finding its conclusions of law as shown in the bill of exceptions, filed herein by plaintiffs in error on December 3, 1891, to which bill of exceptions reference is here made for said conclusions of law so found.

"(3) The court erred in rendering judgment in favor of defendant in error. Wherefore plaintiffs in error pray that the said judgment of the court below be reversed, and this cause be remanded for a new trial in conformity to the opinion of this court."

From this assignment it appears that the error complained of in the court below was in not finding the conclusions of law asked

by the plaintiff in error, instead of those actually found. A comparison of the two shows practically three questions involved: (1) Whether the conveyance from Brockinton to Pessels was a partial or special assignment for the benefit of creditors; (2) whether, as a mortgage for the security of creditors, it was in contravention of the statute regulating assignments for the benefit of creditors; (3) whether the conveyance, otherwise being lawful, was fraudulent, and therefore void as against creditors, because of the recognition and preference given to the debt of Crawford & Crawford.

None of these questions are new in the jurisprudence of Texas. In Hudson v. Elevator Co., 79 Tex. 401, 15 S. W. Rep. 385, a precisely similar conveyance, except as to the recognition of the indebtedness of Crawford & Crawford, was held to be a mortgage, and not an assignment; citing Stiles v. Hill, 62 Tex. 430; Jackson v. Harby, 65 Tex. 710; Baldwin v. Peet, 22 Tex. 708; Watterman v. Silberberg, 67 Tex. 100, 2 S. W. Rep. 578; and the same case holds that such a conveyance is not in contravention of the statute of the state regulating assignments. Mr. Chief Justice Stayton, in delivering the opinion of the court, said:

"It must be presumed that the legislature understood the difference between assignments for the benefit of creditors and mortgages to secure creditors, and it cannot be held that the legislature intended the declaration that 'any attempted preference of one creditor or creditors of such assignor shall be deemed fraudulent and without effect' should operate a denial, even to an insolvent, of the right to make a mortgage whereby some creditors would obtain over others preference. This case, as well as others that have been before this court, however, have proceeded upon the theory that such was the effect of the language above quoted, which is found in the law regulating general assignments. The contrary has been steadily held. Wagon Works v. Tidball, 59 Tex. 291; Stiles v. Hill, 62 Tex. 430; Watterman v. Silberberg, 67 Tex. 100, 2 S. W. Rep. 578, and cases cited. Any other ruling would involve judicial legislation."

Stiles v. Hill, supra, Watterman v. Silberberg, supra, and Johnson v. Robinson, 68 Tex. 399, 4 S. W. Rep. 625, fully sustain the position taken. See, also, Union Bank of Chicago v. Kansas City Bank, 136 U. S. 223, 10 Sup. Ct. Rep. 1013; Reagan v. Aiken, 138 U. S. 109, 11 Sup. Ct. Rep. 283.

The facts show that the debt secured to Crawford & Crawford was for services as attorneys in advising about and preparing the instrument in controversy. In our opinion, this could not affect the validity of the deed of trust. It seems to have been a debt which the grantor had a right to contract; and if he had a right, under the laws of Texas, to prefer creditors, (and it seems he had,) then the obligation to Crawford & Crawford, and the preference given to them, no fraud appearing, was lawful. See Baldwin v. Peet, 22 Tex. 708; Lowenstein v. Finney, (Ark.) 15 S. W. Rep. 153. Certainly the subsequent agreement entered into between Brockinton and Crawford & Crawford and the Sturgis National Bank, with reference to withdrawing the claim of Crawford & Crawford as a preferred claim, in so far as it affected the claim of the Sturgis National Bank, could not avoid the mortgage previously made in favor of other creditors. We see no error in the conclusions

of law as found in the court below; on the contrary, find them sustained on principle and authority.

The judgment appealed from is affirmed, with costs.

McCORMICK, Circuit Judge, having rendered judgment in the court below, took no part in the decision of this case.