WEEKES, McCARTHY & CO. v. A. F. SHAPLEIGH HARDWARE COMPANY.

Decided May 16, 1900.

1. **Questions of Fact.**

Various findings of fact by the trial court held not without support by the evidence.

2. **Agency—Authority to Execute Note.**

An agent placed in charge of a stock of goods bought in by the principal to secure his debt against such agent, "with authority to transact any business in reference thereto that may be necessary and in accordance with the desire of or by agreement with said first party," had no authority, by virtue of such agency, to buy goods on credit to replenish the stock and bind his principal upon a note given therefor.

3. **Same—Pledge of Collateral.**

Nor had such agent authority to pledge to secure such note and debt notes taken by him on sale of goods of his principal, and money collected by the pledgee on such collateral could be recovered from him by the principal.

APPEAL from the County Court of Galveston. Tried below before Hon. M. M. MANN.

*Davidson, Minor & Hopkins* and *J. A. Whitaker,* for appellants.

*William B. Lockhart,* for appellee.

COLLARD, ASSOCIATE JUSTICE.—Suit by Weekes, McCarthy & Co. against A. F. Shapleigh Hardware Company for balance due on note of defendant for $254.39, alleged to have been executed by G. L. Gibson, its agent. Defendent denied under oath that Gibson was its agent, and denied that he had authority to execute the note. Further, Gibson owed it $2000 January 2, 1896, and to secure same executed deed of trust, C. L. Powers, trustee, upon stock of goods in Galveston, and defendant purchased the goods January 21, 1896, and put Gibson in charge of same *to sell* same, not to execute notes. May 18, 1896, defendants resumed possession of the goods not sold by Gibson, after which it first had knowledge of the note; that Gibson gave, as collateral to secure the note sued on, certain notes for bicycles sold by him for defendant; and that the credits on the note were payments made to plaintiffs on account of said notes, and defendants prayed for amount so paid and balance of said notes.

April 11, 1899, plaintiffs replied that the consideration of the note sued on was for goods purchased by Gibson for the business, which was

known to defendant, and defendant thereafter took possession of the goods so purchased by Gibson as agent, and appropriated them and the proceeds of the same to its own use, and thereby ratified the acts of Gibson as its agent in executing the notes, and was estopped from denying the agency of Gibson.

April 11, 1899, defendant filed first supplemental answer, exceptions and general denial. Defendant also pleaded non est factum to the note sued on, and denied under oath that Gibson was its agent to execute the same.

The court, without jury, gave judgment for defendant on plaintiffs' claim, and further, for defendant on counterclaim for $253.39, amount collected by plaintiffs on the notes.

The court below filed conclusions of fact as follows:

"One H. L. Gibson was employed by the defendant, the A. F. Shapleigh Hardware Company, a corporation of St. Louis, Missouri, under a written contract dated January 20, 1896, to take charge of a certain stock of goods, which was formerly the property of the said Gibson, but which had been assigned by him to a trustee for the benefit of his creditors, and which the defendant had bought from the said trustee with the view of saving the debt due to defendant by said Gibson when he made the said instrument, by selling the said goods at retail. Under the terms of the said contract, the said Gibson was placed in charge of the said stock of goods by the defendant with authority to transact any business in reference thereto that may be necessary, and in accordance with the desire of or by agreement with the said defendant. It was not the intention of the parties that defendant would open up a branch business in Galveston, but that the stock, by judicious and careful handling, should be sold at retail for enough to pay to defendant Gibson's debt to it before his failure, and also the amount advanced by defendant to buy the stock from the trustee, and it was to accomplish this that defendant placed Gibson in charge of the stock, and after this was done defendant was to transfer the remaining stock back to Gibson. On or about April 15, 1896, said Gibson borrowed of the plaintiffs $476, for which he executed to them his certain promissory note of that date as follows:

" '$476.                          Galveston, Texas, April 15, 1896.

" 'Thirty days after date, for value received, I promise to pay to Weekes, McCarthy & Co. or order, at their office in Galveston, Texas, four hundred and seventy-six and 00/100 dollars, with interest from date at ten per cent per annum, and ten per cent additional if placed in the hands of an attorney for collection after maturity, having deposited with said Weekes, McCarthy & Co., as collateral security for payment of this or any other liability or liabilities of mine to them due or to become due, or which may be hereafter contracted, the following property, viz: ———, with full power and authority to said Weekes, McCarthy & Co. to sell, assign, and deliver the whole or any part thereof, or any

substitutes therefor, or any additions thereto, at any public or private sale at their option, on the nonperformance of this promise, or the nonpayment of any of the liabilities above mentioned, or at any time thereafter without advertisement or notice, which are hereby expressly waived. After deducting all costs and expenses for collection, sale, and delivery, to apply the residue of the proceeds of such sale or sales to pay any or all of said liabilities to said Weekes, McCarthy & Co. or their assigns, as they shall deem proper, returning the overplus to the undersigned. And the undersigned agrees to be and remain liable to the holder hereof for any deficiency.

"'In case of depreciation in the market value of the security hereby pledged, or which may hereafter be pledged for this loan, a payment is to be made on account, so that the said market value shall be at least —— per cent more than the amount unpaid of this note. In case of failure to do so, this note shall be deemed to be due and payable forthwith, anything hereinbefore expressed to the contrary notwithstanding, and the said Weekes, McCarthy & Co. may immediately reimburse themselves by sale of the security.

(Signed)     " 'H. L. GIBSON, Manager.'

"At the time Gibson executed the said note to the plaintiffs, he left with them as collateral a number of notes belonging to the defendant, which were secured by liens on bicycles which he, Gibson, had sold for defendant, and which said notes were the property of defendant, and from which plaintiffs afterwards collected various sums which they indorsed as payments on the said notes, aggregating $253.39, less $12.74, which sum was a balance which Gibson had on deposit in plaintiffs' bank, which belonged to defendant, and which plaintiffs credited on the said note.

"At or before the time Gibson borrowed the said money from plaintiffs, he left with them his contract with the defendant hereinbefore referred to, and plaintiffs knew that when he had sold enough of the stock to pay to defendant the amount of his debt to it and the amount they advanced to buy in the stock from the trustee, defendant was to transfer the stock back to him, the said Gibson. Gibson had no authority from defendant to borrow money on its responsibility, and he had no authority from defendant to buy goods from anyone other than defendant with which to keep up or replenish the said stock. Nevertheless, with the said money borrowed from plaintiffs, he purchased certain goods, which he placed in the said stock belonging to defendant.

"On or about May 16, 1896, Gibson, on the demand of the defendant, surrendered up to it the said stock of goods, and included with the goods so surrendered were the goods purchased by him with the money borrowed by him of the plaintiffs, but defendant did not at that time know that, he, Gibson, had borrowed any money from the plaintiffs either on his own account or on the responsibility of defendant, or that he had attempted to borrow any money on the responsibility of defend-

ant, either as its manager, agent, or otherwise. And it was after defendant had received back the said stock of goods from him, the said Gibson, and had sold them, the said goods, to other parties, that defendant first had intimation that Gibson had endeavored to borrow money in defendant's name. Defendant never had any inquiry from plaintiffs as to the authority given to Gibson in the management of the said stock and the disposal of the same. Neither did defendant know, until long after it had received back the said stock of goods from Gibson, and had disposed of it to other parties, that Gibson had bought any goods, and placed them in said stock, with money borrowed of plaintiffs. Defendant sent an agent to Galveston, one T. J. Woody, who took possession of the said stock from the said Gibson, and sold it in bulk under instructions from defendant, for 50 per cent of its invoice price."

From the foregoing facts, the court found the law applicable thereto as follows:

"The said note executed by the said H. L. Gibson, to the said plaintiffs, was not the obligation of the defendant, but of the said H. L. Gibson alone, and he alone was responsible to the plaintiffs for its payment.

"Plaintiffs are responsible to defendant for the money collected by them on the said notes belonging to defendant, which the said Gibson deposited with plaintiffs as collateral to the said note which he executed to them, and for the $12.74, balance which Gibson had on deposit in plaintiffs' bank, and which belonged to defendant.

"Defendant never ratified the act of Gibson in executing the said note to the plaintiffs."

The findings of fact by the lower court are correct and are supported by the testimony. Plaintiffs had possession of the contract between defendant and Gibson, their agent, at the time of their transaction with Gibson lending him the $476 evidenced by his note as manager. The contract referred to between Gibson and defendant contained the following: "That, whereas, the said party of the first part has purchased a stock of goods, wares, and merchandise in the city of Galveston, Texas, consisting of bicycles, bicycle sundries, and sporting goods; and whereas the party of the second part desires to take charge of same for said party of the first part and carry on the business for said party of the first part, and it is hereby agreed that the said first party hereby places said second party in charge of said stock of goods and merchandise, *with authority to transact any business in reference thereto that may be necessary and in accordance with the desire of or by agreement with said first party.*" The remaining part of the contract allowed Gibson to retain from the proceeds of sales made $175 per month, in lieu of salary and all expenses connected with the conduct of the business; and Gibson was to give bond for the faithful performance of his duties as agent, and "well and truly to account for and pay over all sums of money received for goods sold for the first party, and make weekly remittances of the net proceeds of all sales made, deducting only his proportionate part of the monthly expenses therefrom."

*Opinion.*—1. The appellant insists that the court below erred in finding that plaintiffs knew that when Gibson had sold enough of the goods to pay defendant its debt and the amount advanced to purchase the stock from the trustee, defendant was to transfer the stock back to Gibson. Gibson testified that before the execution of the note he told McCarthy that after the Shapleigh Hardware Company was paid all that was due them, the stock was to go back to him. The court was warranted in finding the fact.

2. There was testimony warranting the court in finding that "defendant did not, at the time the stock was surrendered back to it, know that he, Gibson, had borrowed any money from plaintiffs, either on his own account or on the responsibility of the defendant, or that he had attempted to borrow any money on the responsibility of defendant, either as its manager, agent, or otherwise."

Shapleigh testified: "Defendant was never notified by the plaintiff direct of the debt claimed of defendant in this case, and defendant never heard of such debt until long after the stock had been taken from the hands of Gibson and sold to other parties. And it was not until long after such sale that defendant first had intimation that Gibson had endeavored to borrow money in defendant's name."

So we see the assignment is not well taken. The finding of the court affects the question of alleged ratification by defendant, which the lower court decided was not proved, and we concur in that conclusion. Shapleigh also testified: "I can not state exactly when defendant first became aware of plaintiffs' demands; but it was not until long after the stock of goods had been disposed of."

3. The fifth assignment is upon the same matter of fact, that there was no evidence to support the finding that it was long after defendant had received back the goods from Gibson and had sold them to other parties that defendant first had intimation that Gibson had endeavored to borrow money in defendant's name. From the above statement of Shapleigh's testimony it will be seen that the assignment can not be sustained. Defendant did not authorize Gibson to borrow money on its account and it was not bound for the debt he contracted with plaintiffs, as will be further seen.

4. There was evidence to support the finding of the lower court that Gibson had no authority from defendant to buy goods from anyone other than defendant with which to replenish the stock.

It is insisted that the contract of defendant with Gibson conferred upon him the disputed authority. We do not so construe the contract. It placed Gibson in charge of the goods, "with authority to transact any business in reference thereto that may be necessary in accordance with the desire of or by agreement with said first party."

The authority to Gibson was to transact any business in reference thereto that may be necessary and in accordance with the desire of or by agreement with the first party. The language limits the authority to act as agent in acting in reference to the very goods turned over to him. If

it had been horses, or other personal property not merchandise, it would be clear that no authority was conferred by the language of the contract to buy other horses to replenish the stock. It is evident from the whole instrument that Gibson was only to sell the stock of goods and to remit all the proceeds of sale to defendant, reserving only his salary and his proportionate part of the expenses, not to reinvest any of the proceeds or to contract debts to replenish the stock. The instrument evidently did not intend to authorize Gibson to contract a debt in the name of defendant by borrowing money to purchase new stock. He had "authority to transact any business in reference thereto" (the goods) "that may be necessary and in accordance with the desire of or by agreement with defendant." This latter clause, it will be noticed, also limits the authority to acts that defendant might desire or that it would agree to. It put plaintiff upon inquiry as to what was desired or agreed to by defendant.

5. We believe the court below correctly inferred from the facts that the note of Gibson was not the obligation of defendant, but was the obligation of Gibson alone. Defendant by sworn plea denied that Gibson was its agent authorized to execute the note, or that it or anyone for it having authority to do so executed the same. This plea was sustained by the testimony.

6. There was no error in the holding that plaintiffs were responsible to defendant for the money collected by them on the notes belonging to defendant, deposited with them as collateral to secure the note.

Gibson had no power to bind defendant by the execution of the note, and consequently no power to pledge defendant's property in notes to secure the debt of Gibson, evidenced by his note; and hence the court did not err in rendering judgment against plaintiffs for the amount collected by them on the notes deposited as collateral.

We have in the foregoing considered and decided against appellants all material questions raised by the appeal, and conclude that the judgment of the lower court should be affirmed, and it is so ordered.

*Affirmed.*