MIERS & ROSE et al. v. TREVINO.
(No. 6234.)

(Court of Civil Appeals of Texas. San Antonio.
May 22, 1919. Rehearing Denied
June 14, 1919.)

1. DESCENT AND DISTRIBUTION ⬥84—WILLS ⬥742—SALES BY HEIRS AND LEGATEES.

Heirs and legatees may sell and convey their interest in the estate.

2. CONTRACTS ⬥82 — CONSIDERATION — PRESUMPTION.

A written instrument reciting a consideration imports one.

3. PRINCIPAL AND AGENT ⬥147(2)—SCOPE OF AGENCY—DUTY TO INVESTIGATE.

One dealing with an agent must ascertain fact of agency, its nature and scope.

4. PRINCIPAL AND AGENT ⬥147(2)—ASSIGNMENTS—VALIDITY—NOTICE.

Where parties assign property controlled by them under powers of attorney, the assignee must take notice of the powers of attorney and their recitals and whether the assignment was within usual scope of assignors' powers.

5. PRINCIPAL AND AGENT ⬥106—POWER OF ATTORNEY—CONSTRUCTION.

A power of attorney authorizing lawyer to assign and handle ' property for client's best interests, etc., does not authorize attorney to make another his associated agent and attorney in fact and assign property to pay already accrued debts of such attorney in fact.

Error from District Court, Bexar County; J. T. Sluder, Judge.

Suit by Jose G. Trevino against Miers & Rose, the State National Bank, the Commonwealth Bank & Trust Company, and others. Judgment for plaintiff, and the named defendants bring error. Affirmed.       '

Lewright & Douglas, of San Antonio, for plaintiffs in error.

Chambers & Watson, of San Antonio, for defendant in error.

---

COBBS, J. On the 20th day of September, 1916, Jose G. Trevino, as plaintiff, instituted suit against A. C. Dauchy, J. G. Griner, attorney in fact for Jose G. Trevino, A. C. Dauchy, as attorney in fact by substitution for Jose G. Trevino, J. H. Kirkpatrick, Walker, Moore & Co., J. Oppenheimer & Co., Alamo National Bank, State National Bank, Commonwealth Bank & Trust Company, successors to West Texas Bank & Trust Company, and Miers & Rose, a copartnership composed of George C. Miers and Fred M. Rose, and Harry Landa, for the primary purpose of annulling and canceling an assignment purporting to have been executed by J. G. Griner, attorney in fact for Jose G. Trevino, and A. C. Dauchy, attorney in fact by substitution:

(a) Because said J. G. Griner, attorney in fact, and A. C. Dauchy, attorney in fact by substitution, were without authority of law to make and execute said assignment, as no such authority was given in power of attorney.

(b) That the assignment made was without consideration and made for pre-existing indebtedness of A. C. Dauchy.

(c) That Griner and Dauchy were acting together to defraud plaintiff for benefit of themselves and A. C. Dauchy.

(d) That claims of defendants are based upon note acquired after maturity and are held as collateral security and upon which plaintiff has a good and valid defense.

(e) That the notes and debts which said assignment purported to cover were not incurred for the benefit of Trevino, or made with his knowledge or consent.

(f) That Griner & Dauchy without authority of law attempted to make and create an indebtedness and attempted to secure same.

(g) That the defendants were not holders of said notes for valuable consideration, and were not innocent purchasers and holders of same, because at time of said purported assignment neither power of attorney of Dauchy or Griner was on file with county clerk, and, when said assignment was made, it was for pre-existing debts of A. C. Dauchy or A. C. Dauchy Company.

(h) Because said power of attorneys did not give to Griner or Dauchy the right to make an assignment of kind and character made, and was insufficient and indefinite as to property or persons.

(i) Because said power of attorneys had been canceled.

(j) Because under article of association of A. C. Dauchy Company, which was on file with county clerk of Bexar county, Tex., it was provided that one partner could not be held liable for debts of former or other members of partnership, and a copy of which was attached to plaintiff's first amended petition.

Plaintiff swore to amended petition; also supplemental petition.

Defendants State National Bank and Commonwealth Bank & Trust Company, answered by general demurrer and general denial. Defendants Miers & Rose answered by general demurrer, special exceptions, and general denial, and further pleaded that they advanced A. C. Dauchy, for A. C. Dauchy Company, the sum of $15,000, and also excepted to intervention of Alamo Trust Company. Defendants Alamo National Bank, J. H. Kirkpatrick, West Texas Bank & Trust Company, J. Oppenheimer & Co., and A. B. Frank Company answered by general demurrer and general denial.

None of defendants file sworn answer or special pleas, and only State National Bank, Miers & Rose, and Commonwealth Bank & Trust Company appeal this case.

On December 23, 1918, defendants State National Bank, Miers & Rose, and Commonwealth Bank and Trust Company sued out this writ of error. Defendants A. B. Frank & Co., J. Oppenheimer & Co., Alamo Trust Company, Alamo National Bank, Walker, Moore & Co., Harry Landa, and J. H. Kirkpatrick are not before this court, not having joined in the writ of error.

The defendant in error has filed no assignments of error nor made any cross-assignments.

The first assignment of error is:

"The court erred in rendering judgment canceling the written assignment to J. H. Kirkpatrick, trustee, because J. G. Trevino had executed a power of attorney appointing J. G. Griner his attorney in fact, with full power to execute such an assignment, and it is undisputed herein that said written assignment was executed for and on behalf of said Trevino by said Griner as such attorney in fact upon the authority of said power of attorney."

The plaintiffs in error, for the statement under that proposition, gives a synopsis of the power of attorney dated November 19, 1914, Jose Geronimo Trevino to J. G. Griner, to support their contention, to wit:

"(c) To settle claims, debts, judgment, etc., and receive the money thereon, giving the proper receipts, releases, and discharges.

"(d) To enter into and make such written contracts or agreements as he, said Griner, may deem to the best interests of said Trevino.

"(e) To sell, assign, hypothecate, and mortgage any and all or any part of J. G. Trevino's properties.

"(f) To handle the business or property of whatsoever character of said Trevino as the said Griner may deem to his best interests and as circumstances may arise and conditions demand."

Now, on August 9, 1915, Griner, pretending to act under and by virtue of his agency and power of attorney, constituted A. C. Dauchy (an associate) substitute attorney with himself with all the powers he claimed to possess under his power of attorney. Thereafter, on January 10, 1916, the said

J. G. Griner and A. C. Dauchy, pretending to act for said Trevino, made the assignment hereinbefore described, reciting "whereas the A. C. Dauchy Company, of which Jose Geronimo Trevino is a member, is indebted to the several persons and firms hereinafter named." These ' two attorneys in fact thereby attempted to transfer and assign in the most general terms to J. H. Kirkpatrick, in trust, "all of the right and interest of said Jose Geronimo Trevino in and to the funds on deposit with the Groos National Bank of San Antonio, Tex., or any other funds in the United States, belonging to the estate of Gen. Trevino, deceased." It will be observed A. C. Dauchy, the substitute agent and joint attorney in fact, is joining in a general assignment of the entire estate, so to speak. in money of his principal, .to pay certain designated creditors of which his company is alleged to be a debtor, and therein making one preference. Did Griner himself, under his power, have such authority? If not, Dauchy, his associate agent, it is clear, would not have.

The only property in the United States in which Trevino had any interest was in the money his deceased father had deposited in banks in this country, principally in the Groos Bank. The language of the Trevino power to Griner on this point is "to enter into and make such written contracts or agreements as he, said Griner, may deem to the best interest of said Trevino, to sell, assign, hypothecate, and mortgage any and all or any part * * * as the said Griner may deem to his best interests and as circumstances may arise and conditions demand." It was certainly not to his interest to pay debts of Dauchy and A. C. Dauchy Company. There is no specific amount of indebtedness mentioned to be secured by the assignment save that in favor of George D. Miers and F. M. Rose of $10,000.

[1] The contention of plaintiffs in error that heirs and legatees may sell and convey their interest in any estate or interest in any other property for that matter is well settled by law.

[2] It is also well settled that any written instrument reciting a consideration imports one.

The undisputed facts are that Gen. Geronimo Trevino, deceased, by his will devised to his son, Jose Geronimo Trevino, a one-fifth interest in the funds (or money) on deposit with the Groos National Bank, of San Antonio, Tex., supposed to be more than several hundred thousand dollars, belonging to his estate; that Jose Geronimo Trevino gave to Jones Green Griner a power of attorney to represent him. This power was dated November 9, A. D. 1914, and was filed for record March 4, 1916, a little more than two years afterwards. On the 9th day of August, 1915, claiming to act by virtue of and under that authority, he, the said Jones Green Griner, made A. C. Dauchy his associated agent and attorney in fact for Jose Geronimo Trevino to help him administer that trust, being only money in a bank. This instrument· was likewise recorded in Bexar county March 4, 1916, more than a year after its execution.

On the 10th of January, 1916, by an assignment to J. H. Kirkpatrick as trustee, declared as follows: "J. G. Griner, as attorney in fact for Jose Geronimo Trevino," and "A. C. Dauchy, as attorney in fact by substitution for Jose Geronimo Trevino," made a general assignment for the benefit of certain named parties, reciting as follows: .

"This assignment is made to the said Kirkpatrick for the following purposes, to wit: The said Kirkpatrick shall pay to Geo. B. Miers and F. M. Rose the sum of $10,000, and the balance shall be paid pro rata according to the amounts of their several claims to Alamo National Bank of San Antonio, State National Bank of San Antonio, West Texas Bank & Trust Company of San Antonio, Walker, Moore & Co., J. Oppenheimer & Co., A. B. Frank Company, and Harry Landa. It was not provided how the amounts were to be ascertained or proven. It recited· it was to recover all funds with Groos National Bank or anywhere else in the United States. Being a very large and valuable estate, the assignment was so broad and far-reaching as to take in all in this republic, and did not provide that he could even get the surplus after paying above-named parties, but that it should ·go to said Kirkpatrick in lieu of paying the same to said Jose Geronimo."

What was Kirkpatrick to do with it? How much of his estate would it take to pay all those claims? How much was to be paid to each? Defendant in error was not insolvent. In this assignment there was a preference made in favor of Miers & Rose of $10,000. We are not shown under what part of Jones Green Griner's power from Trevino that he is authorized to so partition said estate and so pay off creditors.

On the 19th day of December, 1915, A. C. Dauchy, J. G. Trevino, R. W. Hopple, Harvey L. Miller, and G. C. Moore organized what they called an association, called "A. C. Dauchy Company (Unincorporated), Limited." It was filed for record in Bexar county on January 9, 1915.

It was to exist for 25 years and have a capital stock of $250,000, divided into 2,500 shares of the par value of $100 each, to be represented by stock certificates. It had a provision "that no personal or individual liability shall be or is created under said contract against the shareholders or members of this company." It further provided "that no personal liability as copartners or otherwise shall incur or attach to any shareholders; * * * all such liabilities incurred by this company shall only attach to and be collectable out of the property of the company as such."

On the 15th day of July, 1916, A. C. Dau-

chy, H. L. Miller, and R. W. Hopple caused it to be amended and capital increased to $500,000, and certified that all the capital stock had been subscribed and had been paid in property described as real and personal property of A. C. Dauchy Company. It was not shown who constituted the company, but some property in name of Kirkpatrick & Dauchy was put in. Jose G. Trevino stated he gave his note to said company for $60,000, but that is not mentioned in the list. This amended charter was filed for record July 26, 1916.

Trevino says he gave his note originally for $60,000 into the partnership; was not to put in any money; after partnership was formed, January, 1915, remained in San Antonio until April, 1915; took no part in the A. C. Dauchy Company; went to New York to reside. The $60,000 note he gave Dauchy was to mature six months after date, and Dauchy was to make arrangements for the payment or extension. The understanding was that the note was to be paid out of the sale of the properties that Dauchy had put into the Dauchy Company. "I was not expected to pay the notes at all out of what I inherited from my father." The compensation for putting up the $60,000 in notes was about one-third interest in what remained after liquidating the properties of Dauchy, whatever interest then could be had in the other business in the Dauchy Company— "all properties, all commissions on sales made to third persons." He stated he did not owe or sign any notes or obligations to the parties named in the assignment made by Griner & Dauchy to Kirkpatrick.

On the 15th of February, 1916, Trevino revoked the power of attorney he gave Jones Green Griner, using following language, among other:

"If you tried to make any transfer of authority to A. C. Dauchy under power of attorney I granted you, said power was canceled by that action. Beg to notify again that neither you nor A. C. Dauchy could have acted after such transfer nor can act. All authority absolutely forfeited, and anything done thereby is null and void."

It was filed for record September 12, 1916.

It was agreed that A. C. Dauchy was living in New York and had been living out of the state for a year. It does not appear that any stock was issued and delivered to appellee, to represent his interest in the partnership, but he said he would be interested, we suppose, in one-third the profits and in the balance of the partnership. By the terms of the instrument it was stipulated against personal liability, all debts to be paid out of partnership fund. It does not become necessary here, from the view we take of this case, to discuss that feature.

Trevino said he was giving this power of attorney to have his business looked after in Mexico; it was only money he was interested in here; that his father's estate was tied up here in an administration. There was no denial of his interest, and that it was all in money in banks, but it could not be told when he would get it out. He may have desired or needed to use some of the money, and thereby gave his agent power to assign or mortgage it, in whole or in part, to raise him some money; that is perhaps what was in his mind. Still there is no language in that assignment to justify Griner in appointing Dauchy his coagent by calling him his substitute to act with him. While he had the power to substitute, that is, to put some one in his place to act, it contemplated his retirement, perhaps.

Now, A. C. Dauchy constituted practically the entire association, and all the debts and liabilities of it were his, and no part thereof in any sense the personal individual debts of appellee. When Griner and Dauchy made that assignment, it was a case in which Dauchy, the pretended agent, was disposing of his principal's money to pay Dauchy's own obligations, and this, too, without the knowledge and consent of his principal. He made a preference of $10,000 to pay off one claim then a general assignment of all his claimed principal's estate in the United States of America to pay off the amount of claims unknown and unstated, and then declared the entire surplus, if any, remaining of an estate valued at the time at some $200,000 should go to Kirkpatrick, the assignee. So soon as Trevino ascertained that Griner had done these things he promptly repudiated it and revoked Griner's power of attorney.

[3, 4] One dealing with an agent is bound at his peril to ascertain both the fact of agency, its nature and scope. Dawson & Young v. Nunn & Latham, 200 S. W. 603. The parties claiming under that assignment had to take notice of all those recorded powers of attorney and their recitals and whether that assignment was within the usual scope or ordinary powers of Griner and Dauchy. H. & T. C. Co. v. Hill, 63 Tex. 384, 51 Am. Rep. 642; Connor v. Uvalde Nat. Bank, 156 S. W. 1094; Baker & Co. v. Kellett-Chatham Mach. Co., 84 S. W. 661; Sackville v. Storey, 149 S. W. 240.

[5] We do not believe that this instrument can be held valid; for one reason, among others, the defendant in error's property was all in money, and he never contemplated nor can the language of Griner's power be construed to mean he was authorized to make a general assignment to pay the debts of another or for that matter his own obligations past due. Such a purpose is a personal one. An assignment to pay debts past due must partake of a personal nature, and the assignor must have known or intended such a purpose. See Gouldy v. Metcalf, 75 Tex. 455, 12 S. W. 831, 16 Am. St. Rep. 912.

" 'When an authority is conferred upon an agent by a formal instrument, as by a power of attorney, there are two rules of construction to be carefully attended to: (1) The meaning of general words in the instrument will be restricted by the context, and construed accordingly; (2) the authority will be construed strictly, so as to exclude the exercise of any power which is not warranted either by the actual terms used, or as a necessary means of executing the authority with effect.' Ewell's Evans, Ag. 204, 205; Reese v. Medlock, 27 Tex. 123, 124 [84 Am. Dec. 611]. Applying these rules to this case, and none of the circumstances under which the power was executed being shown, we are of opinion that the attorneys in fact did not have the power to make the assignment, and that the court did not err in so holding." Frost v. Brath Cattle Co., 81 Tex. 505, 17 S. W. 52, 26 Am. St. Rep. 831.

In the case of Skirvin v. O'Brien, 43 Tex. Civ. App. 1, 95 S. W. 699, this court said:

"It is so well settled as to be elementary that such instruments as powers of attorney must be strictly construed, and that under no circumstances will the principal be bound beyond the plain import' of the language of the instrument. Gouldy v. Metcalf, 75 Tex. 455, 12 S. W. 830, 16 Am. St. Rep. 912; Frost v. Erath Cattle Co., 81 Tex. 505, 17 S. W. 52, 26 Am. St. Rep. 831. In accordance with this rule it is settled that a power to convey lands does not authorize a conveyance in exchange or partition of lands; that a power to sell does not authorize the agent to barter for other property, and that a power to sell and convey does not include the power to convey in discharge of a' debt or a claim."

Defendant in error never contemplated or by that power of attorney authorized his agent to pledge his property to secure a past indebtedness of Dauchy or Dauchy Co., and he was not thereby bound for such debts. Weekes v. Shapleigh Hardware Co., 23 Tex. Civ. App. 577, 57 S. W. 69.

If we should construe the language in Griner's power authority in him and Dauchy to make the deed of assignment to Kirkpatrick to pay the debts of A. C. Dauchy or the A. C. Dauchy partnership, which we do not, still no power was given to make such conveyance without a present consideration of some kind, certainly not upon a consideration inuring to the benefit of his agent in the payment of the agent's debts and liabilities, for the assignment was made to secure the antecedent primary debts of creditors of A. C. Dauchy, not defendant in error, and he had no such express or implied authority. Hunter v. Eastham, 95 Tex. 648, 69 S. W. 67.

This power of attorney to Griner from Trevino is a lengthy instrument. Griner was a practicing attorney. Trevino, who had recently come to Texas from Mexico, secured the services of Griner to represent him, and the power of attorney was made before a notary public, as is the usual method in Mexico, but in fact executed in the form of Texas powers. It recited Griner "a lawyer by profession." It gave full power by name to represent him in certain real and other property interests in Mexico as well as in this country. It gave authority to "make such written contracts or agreements as he, said Griner, may deem to the best interests of said Trevino"; then follows "to sell, assign, hypothecate, and mortgage * * * and to handle the business or property of whatsoever character * * * as the said Griner may deem to his best interest," not Griner's. Was it to his best interest for Griner to make A. C. Dauchy his associated agent and attorney in fact? Was it to his best interest for Griner & Dauchy to assign all his property to pay Dauchy's debts? Why are those instruments so drawn by Griner? The very nature of these transactions creates suspicion and imposed inquiry upon those dealing with them, as to, to say the least, the power created, and, if followed, it would have been discovered that appellee repudiated the transaction or would have done so; for the record shows he did revoke Griner's power as soon as he could after he had notice of Dauchy's appointment. The language to "assign" did not imply authority to make a general assignment of his estate to pay creditors or the past partnership debts of Dauchy, or to mortgage it for those antecedent debts of that Dauchy partnership business. There is no language in the instrument that can be so construed as to give that effect to the instrument. The words "assign" and "assignment," as used here, have two very different legal meanings. "Assign" means making over an estate to another. Harlowe v. Hudgins, 84 Tex. 107, 19 S. W. 364, 31 Am. St. Rep. 21. In such an instrument there is no element of trust. In an assignment there is also an unconditional parting with title to the grantor, but in trust only, for a definite and specific purpose. Locht v. Blum, 10 Tex. Civ. App. 385, 30 S. W. 925, affirmed in 93 Tex. 713.

The difference between an assignment and a mortgage is that in the former case the absolute title passes, while in the latter a lien only is created, which may be passed through foreclosure proceedings under the power conferred by the instrument. Hudson v. Eisenmayer, Sr., Milling, etc., Co., 79 Tex. 407, 15 S. W. 385.

We hold that the instrument in question, the pretended assignment from Griner & Dauchy to Kirkpatrick, was in law creating him the trustee for the purpose of taking appellee's estate to pay off certain named creditors, and was such an assignment as the said Griner & Dauchy had no power to create, a trust estate in Kirkpatrick as was attempted for the purposes named, and he no power to execute.

We have considered all the errors assigned, and from the view we take of this case

it is not necessary to further discuss them. There is no reversible error assigned, and we overrule all assignments of error.

The judgment is affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

